## HALL-DOYLE EQUITY CO. *v.* CROOK.

1. VENDOR AND PURCHASER—FRAUD—LACHES.

In a suit to rescind a contract for the purchase of an apartment house on the ground of fraud, a charge made by one of the defendants that plaintiff connived with another defendant and delayed action for rescission until the parties could not be placed *in statu quo* in order to secure a money decree, *held,* not supported by the record.

2. FRAUD—RESCISSION—LACHES.

The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded.

3. APPEAL AND ERROR—PLEADING—CASE CONSIDERED ON RECORD AT TIME OF HEARING.

Where, at the time a bill for the rescission of a land contract on the ground of fraud was filed, plaintiff had not been fully advised of the facts, and the bill was later amended, criticism of the bill as first filed is without merit, since the case must be disposed of on the record before the trial court at the time of the hearing.

4. FRAUD—JOINT WRONG-DOER LIABLE FOR FRAUD.

One who deliberately gives another a false statement in writing, knowing the purpose for which it is to be used, which that other uses to deceive a third party, is a joint wrong-doer, and must be held responsible for the consequences which follow.

5. VENDOR AND PURCHASER—FRAUD—VENDOR GUILTY OF FRAUD IN GIVING CREDIT FOR PAYMENTS NEVER MADE IS LIABLE TO DEFRAUDED THIRD PARTY.

The owner of an apartment house who executed a contract for its sale, giving the vendee credit for payments which were never made and which were never intended to be made, for the purpose of making it appear that the vendee had a valuable equity therein, is liable to one defrauded thereby, although the owner received no benefit from the fraud, where, at the time the contract was executed, he had knowledge of the pending deal for resale of the property by the vendee.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 18, 1928. (Docket No. 146, Calendar No. 34,042.) Decided December 4, 1928. Rehearing denied February 19, 1929.

Bill by the Hall-Doyle Equity Company against George T. Crook, Ida M. Blake, and others for rescission of a land contract, and to enjoin a foreclosure. From a decree for plaintiff, defendants appeal. Affirmed.

*Clark, Klein, Ferris & Cook,* for plaintiff.

*Samuel Shimans,* for defendants Crook.

*Lawrence D. Larke,* for defendants Blake.

SHARPE, J. In October, 1925, the defendants Mr. and Mrs. Crook leased what is known as the Lucy Ann apartments in the city of Detroit, then owned by them, to Sherman U. Blake and Ida M. Blake, his wife, for the term of 10 years, at a rental of $680 per month. The Crooks left for California in November. They had been trying to dispose of the apartment building, and before leaving, in answer to an inquiry of Blake, Mr. Crook said they would sell it for $100,000 net to them. Blake at once set out to obtain a purchaser. Through a real estate agent, Frederick W. Leighton, he got in touch with Dr. Hall of the plaintiff company. Blake told Leighton, and afterwards Dr. Hall, that he had an apartment for exchange in which he had invested "in real cash" approximately $30,000, the income from which was about $1,200 per month.

The plaintiff was the equitable owner of a farm of 121 acres in Washtenaw county, the title to which, however, stood in the name of Ben Breitenwischer. The three of them went to look at this farm. Blake

was unwilling to exchange his equity in the land contract for the farm. Dr. Hall, on behalf of the plaintiff, agreed to also convey 6 lots owned by the company in a subdivision adjoining the Washtenaw Country Club. A preliminary agreement embodying these provisions was executed on February 2, 1926. The deal was to be closed on February 15th. This agreement was signed by Breitenwischer. Blake's consideration was stated therein to be $31,000, "My equity in Lucy Ann Apt., No. 1632 Gladstone avenue, Detroit, Michigan, subject to $94,000 approx."

Pending these negotiations, Blake wrote Crook, who was still in California, telling him the nature of the deal he was making, and sent him for execution a land contract, dated October 15, 1925, in which Crook and his wife agreed to sell the apartment property to the Blakes for $125,000, of which $30,000 was acknowledged to be then paid, and the balance in monthly instalments of not less than $750. At the time of its execution, Crook, at Blake's request, indorsed on it as received by him the monthly payments due in November, December, and January following. Crook understood that Blake was to pay him but $6,000, which sum, together with the $94,000 unpaid upon the contract, amounted to the $100,000 he asked for the property. For this Blake was to secure the farm and the lots. This contract was not returned to Blake. It was sent by Crook to his son in Detroit and placed by him in the hands of an attorney, and there signed by the Blakes.

On February 24, 1926, Mr. and Mrs. Blake executed an assignment of this land contract to the plaintiff. On the following day, the deeds from Breitenwischer and his wife to Mr. and Mrs. Blake of the farm and from the plaintiff to them of the lots were placed on record and possession of the

apartment building given to plaintiff. The contract and assignment thereof were not delivered to plaintiff until March 28, 1926. Blake represented that Crook held possession of the contract as a security for money owing to him, and after the record of the deeds to him he executed a mortgage on the farm to a bank at Manchester for $3,500, which was recorded on March 1, 1926. The check therefor was not delivered to Blake, but to the attorney for Crook. It also appears that Blake turned over other security to him to make up the $6,000 he had agreed to pay to Crook as a consideration for the land contract.

It was some time later that plaintiff learned that there had not been an actual sale of the property from the Crooks to the Blakes. Mr. Blake died on April 26, 1926. In an interview sought by Dr. Hall, Mrs. Blake was uncertain whether her husband had paid the $30,000 to the Crooks. She made an affidavit at his solicitation, wherein she stated that ''she and her husband were not possessed of assets in the sum of thirty thousand ($30,000) dollars or any such sum as of October 15, 1925, or thereabouts.'' She thereafter, however, sold the farm and lots, and they were at the time this suit was commenced in the hands of innocent purchasers.

On August 4, 1926, the Crooks served notice of forfeiture of the land contract on the plaintiff, and on the same day plaintiff served notice of rescission of the contract and tendered an assignment thereof to Mr. Crook. The bill of complaint herein was filed on the next day. In it plaintiff prayed that the assignment of the land contract to it be decreed to have been procured by fraud, and that it be rescinded and canceled; that the threatened proceeding to forfeit the contract be enjoined; that the amount paid by it be decreed to be an equitable lien upon

the apartment building, and for an injunction restraining the disposing of or incumbering the property, and for other relief.

Mr. and Mrs. Crook answered, and by way of cross-bill prayed for foreclosure of the contract. The bill was afterwards amended to state the facts later coming to the knowledge of plaintiff, as above stated. A decree was entered as prayed for in plaintiff's amended bill, setting aside the contract and giving plaintiff a lien upon the building for $21,000, which the court found to be the fair value of the farm and lots conveyed to the Blakes. The defendants appeared by separate attorneys, and all of them appeal therefrom.

In view of the fact that Mrs. Blake had disposed of the property deeded by plaintiff before the commencement of this suit, the right of plaintiff to seek relief in a court of equity might be questioned. The parties, however, ask decision on the record as here made, for the reason that a proceeding to foreclose a mortgage on the apartment building property is now pending, and we have concluded to do so. We make reference to it, however, in order that this case may not be considered as a precedent to secure the remedy sought.

Counsel for Mr. and Mrs. Crook does not defend the action of his clients in the execution of the land contract to the Blakes. He here contends:

(1) That the plaintiff was guilty of laches; and,
(2) That it was not defrauded.

1. *Laches.* It is urged that plaintiff connived at, if not encouraged, transfer of her property by Mrs. Blake, and that it delayed proceedings until that had been done and the parties could not be placed *in statu quo* in order to secure a money decree.

We have read the record tending to support this charge with care, and cannot find that it does so. Both Mrs. Blake and Dr. Hall make denial thereof. The deal was concluded on March 28, 1926. Dr. Hall testified that soon thereafter he was told that Mr. Crook had offered the apartment property for sale for $100,000. After an interview with Mrs. Blake, he secured the affidavit from her, above referred to, on May 18th. He submitted this affidavit to his attorney, and was advised that it did not furnish sufficient proof to justify a suit, and that he would better see Mr. Crook. In a talk with Crook over the telephone the latter said, in effect, that he had nothing to do with the deal made with Blake. The date of this conversation is not given, but it was probably in June, 1926. This suit was begun on August 5th of that year. Plaintiff was not at that time fully advised of the facts on which relief is now sought. The last amendment to the bill of complaint was filed on the second day of the trial. In the meantime, the deed from Mrs. Blake was recorded on May 24, 1926. There is nothing in the record to indicate that there was collusion between Dr. Hall and Mrs. Blake, or that the former in what he did was not acting under the advice of reputable counsel. In *Barron* v. *Myers,* 146 Mich. 510, 514, it was said:

"The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded."

This statement was quoted with approval in *Zadel* v. *Simon,* 221 Mich. 180. See cases cited in the latter, and, also, *Bailey* v. *Perkins,* 224 Mich. 27.

The bill of complaint first filed is criticised, as is also the form of the notice of rescission. It is apparent that these were prepared by plaintiff's at-

torney, based on the information then communicated to him by Dr. Hall. The case should be disposed of on the record before the trial court at the time of the hearing.

2. *Proof of Fraud.* It is the claim of counsel for the defendants that the plaintiff was not defrauded; that Dr. Hall had not seen the Blake contract until after the deal was closed; that plaintiff placed no reliance on it, and knew that the $30,000 had not been paid thereon.

Blake's purpose in securing the contract from Mr. and Mrs. Crook, wherein the purchase price was stated to be $125,000 and $30,000 was acknowledged to have been paid thereon, and certain monthly payments thereafter made, is apparent. He wanted to satisfy Dr. Hall that he had an equity in the property of $30,000 at the time it purported to have been executed in October, and that by the indorsements thereon he had increased his equity to $31,000. While there is no direct proof that Dr. Hall saw this contract after it was executed by Mr. and Mrs. Crook and placed in the hands of their attorney, it cannot be doubted that he was informed of its contents. The deal was consummated on the understanding that Blake's equity was $31,000, and not $30,000, as he had at first told Leighton. Dr. Hall understood that the reason the contract was not in Blake's possession was that Crook insisted that a personal obligation of Blake's, amounting to $6,000, must be paid before delivery, and that the mortgage was placed on the farm to assist in raising this amount. It was unfortunate that Mr. Blake had passed away before the trial. But on the record before us we cannot but say that there is a preponderance of evidence supporting plaintiff's claim that it relied on the fact that Blake had entered into a

contract to purchase the property, and that he had actually paid Crook $31,000 thereon.

It cannot well be said that if this fact be found plaintiff is not entitled to relief. While parties dealing with each other may indulge in "seller's talk" as to the value of their respective properties, a false representation of a fact bearing thereon, relied upon by the purchaser, and which becomes an inducing cause of the contract made, is actionable on the ground of fraud. *Pratt* v. *Allegan Circuit Judge,* 177 Mich. 558. The holding in that case was cited with approval in the recent case of *German Bundesheim Society* v. *Schmidt,* 242 Mich. 139, and also in *Merlau* v. *Kalamazoo Circuit Judge,* 180 Mich. 393. In the latter case, one of the false representations relied on, and held to be actionable, was the statement of the defendant that he had sold the property on a land contract for $4,000 and received a payment of $1,500 thereon. Clearly, the plaintiff was entitled to relief against the estate of Mr. Blake and against Mrs. Blake.

While there probably was no intent to defraud on the part of Mr. Crook, his unwarranted action made it possible for Blake to perpetrate the fraud upon the plaintiff. He could but have understood that Blake wanted this contract for the purpose of satisfying the plaintiff that the oral statement theretofore made by him was true. In *Stoney Creek Woolen Co.* v. *Smalley,* 111 Mich. 321, 324, it was said:

"Where one deliberately gives another a false statement in writing, knowing the purpose for which it is to be used, which that other uses to deceive a third party, he is a joint wrong-doer, and must be held responsible for the consequences which follow."

That Crook received no benefit from the fraud is no defense.

"All persons who are active in defrauding others are liable for what they do, whether they act in one capacity or another." *Haener* v. *McKenzie,* 188 Mich. 27, 35.

The decree is affirmed, with costs to appellee.

Fead, C. J., and North, Fellows, Wiest, Clark, McDonald, and Potter, JJ., concurred.