HOLBROOK v. BLICK.

1. EQUITY—JURISDICTION—FRAUD—RESCISSION—LIENS.
Court of equity has jurisdiction in cases of fraud where property interests are involved, and where, on rescission, it is sought to impress lien against *res* in question on account of said fraud.

2. JOINT ADVENTURES—PARTNERSHIP—INTEREST IN LAND.
Contract whereby plaintiffs purchased one-half of vendee's interest in contract on apartment house did not constitute partnership, but at most transaction was joint venture.

3. FRAUD—LACHES—WAIVER—INTENT.
Where plaintiffs, on discovering that they had been defrauded in purchasing one-half of vendee's interest in land contract, promptly notified defendants, brief delay caused by plaintiffs' attempts at settlement, which in no way injured defendants, did not amount to waiver of right to rescind, in absence of acts on plaintiffs' part indicating intent to waive.

4. VENDOR AND PURCHASER—FRAUD—VENDORS LIABLE FOR FRAUDULENT CREDIT ON CONTRACT—INTENT.
Where vendors in land contract represented entire consideration to be about $120,000, when in fact it was only about $82,000, and gave vendee credit for about $44,500, when in fact he had paid only about $6,000, making it possible for vendee to perpetrate fraud on plaintiffs, vendors are liable for consequences thereof, although they had no wrongful intent.

Appeal from Wayne; Jayne (Ira W.), J. Submitted October 30, 1931. (Docket No. 224, Calendar No. 36,132.) Decided January 4, 1932.

Bill by Frank Holbrook and another against Edward S. Blick and others to rescind, on ground of fraud, the purchase of an interest in real estate, and

for lien for amount paid by them. Decree for plaintiffs. Defendants appeal. Affirmed.

*G. Sweetman Smith,* for plaintiffs.

*Lawhead & Kenney (Lightner, Oxtoby, Hanley, Crawford & Dodd,* of counsel), for defendants.

BUTZEL, J. Frank Holbrook conducted a nursery from the yard and garage in the rear of his home, and also did some landscape gardening. He had previously worked in an automobile factory and had but little experience in financial and real estate transactions. He and his wife are plaintiffs herein. They had come to rely wholly on the business advice of one Edward S. Blick, defendant herein, and believed him to be honest and able, and one of their very best friends. Blick was the branch manager of a large bank in Detroit, and represented to plaintiffs that the president of the bank was a close friend of his, and had told him in confidence about the piece of property involved in the present litigation. Blick, in turn, therefore, requested plaintiffs not to mention it to anyone. Defendant Mulkey & Company, and its manager, John C. Mulkey, are defendants herein. They were engaged in buying and selling land contracts. They had purchased the vendor's interest in a contract for the sale of the Elmhurst Apartments in Highland Park, Michigan. Both the vendor's and vendee's interests had been traded in and transferred a number of times before defendants became interested. The vendee's interest had finally become vested in one Schrader, who later defaulted in his payments. The vendor's interest had been sold and payment of sums to become due thereon guaranteed by the Mulkeys, to William P.

Emery, trustee, defendant herein. Emery took no part in the transaction with plaintiffs, and he transferred his interest back to the Mulkey Company. He was properly absolved from all liability by the decree.

In 1928, Blick, learning that Schrader was in default, negotiated with him for the purchase of his interest, but found it more advantageous to wait until Schrader's interest should be extinguished by the foreclosure proceedings, and then deal with Mulkey & Company. After the Schrader foreclosure and repossession by Mulkey & Company, a new contract was entered into by Mulkey & Company with Blick as vendee, in which the purchase price of the property was stated to be $120,000, and the receipt of a down payment of $44,553.40 was acknowledged. As a matter of fact, only $6,400 or thereabouts was paid in on the contract. It should be noted, however, that the actual amount paid, when added to all amounts represented to have been paid by previous vendees on the former contract, amounted to $44,553.40, and that while the real purchase price was $82,000 or thereabouts, the original price in 1925 was $120,000. Had the old contract remained in force and been assigned to Blick, the amounts of the consideration and payments, as stated in the new contract, would have been correct.

While Blick was closing the deal with Mulkey & Company, he falsely represented the transaction to be in accordance with the new contract. By using what is commonly termed "intense salesmanship," he succeeded in persuading plaintiffs to purchase a one-half interest in the contract. He told them that $44,553.40 had been paid on it and plaintiffs agreed to acquire the one-half interest from Blick for $22,000.

In order to pay Blick, they drew $4,300 from the savings bank, practically wiping out their bank account; they discounted a note for $500; they placed a mortgage on their home for $3,400; and they surrendered a note for $2,500 representing a loan they had previously made to Blick. The balance they were to pay later. Blick represented that the rentals from the property were sufficient to make all further payments on the contract. He enjoined secrecy on the part of plaintiffs, and warned them not to appear in the apartment house and thus disclose their interest. They, therefore, made only a casual inspection of the building. Later in the year Blick came to them in great distress and stated that he was in most serious financial difficulties and might be subject to criminal prosecution unless he secured money immediately. Plaintiffs thereupon raised $1,000, which they turned over to him and he, in turn, gave them an assignment of the entire vendee's interest in the land contract. Blick was discharged by the bank for misconduct. The record shows Blick's duplicity in the entire transaction. Plaintiffs claimed that the assignment of the full interest was given to them at first as security, but Blick states that he gave an absolute assignment because he felt sorry for them. They permitted Blick to continue to collect the rents. In December, finding that Blick had collected a month's rent and converted it to his own use instead of applying it on the payments due Mulkey & Company, Holbrook went to see Mulkey & Company and found out for the first time that he had been deceived; that instead of paying $44,000, or thereabouts, for the vendee's interest, Blick had only paid $6,400, or thereabouts, although he had in the first instance received

amounts aggregating $10,697 from plaintiffs. Plaintiffs immediately protested, and over two weeks elapsed during which negotiations were carried on with Mulkey & Company in regard to a settlement, by which plaintiffs would keep the property and an allowance be made to them. During that time, plaintiffs collected a small amount of rent but promptly turned it over to the receiver who was appointed shortly thereafter in the present proceedings. Being unable to arrive at a settlement, they gave notice of rescission, and brought the present suit and asked for a decree against all of the defendants, and that the amount due them be declared a lien against the property.

There is much conflict in the testimony. Holbrook claims that Mulkey told him that it was customary in real estate deals to "pad" a land contract so that it could be sold to the unwary. The testimony was taken before a circuit court commissioner who made his findings of fact and law. They were reviewed by the circuit judge, who entered a decree in accordance therewith, finding the sum of $13,104.71 due plaintiffs and impressing a lien for that amount with interest against the property. Defendants Mulkey & Company and John C. Mulkey in their appeal raise a number of questions, which we shall discuss *seriatim*.

It is claimed that the court of equity had no jurisdiction. Defendant Emery appeared in the case, answered the bill, and asked that a receiver be appointed for the property. A court of equity has jurisdiction in cases of fraud, where property interests are involved, and where on rescission it is sought to impress a lien against the *res* in question on account of such fraud. *Wright* v. *Hake,* 38 Mich.

525; *Boyd* v. *Post,* 227 Mich. 328. The equity court properly acquired and kept jurisdiction.

It is claimed that Blick and the plaintiffs were copartners, and plaintiffs cannot complain on account of the action of their partner. At most, the transaction was a joint venture and not a copartnership. *Beecher* v. *Bush,* 45 Mich. 188 (40 Am. Rep. 465). See, also, *Brown* v. *Harris,* 139 Mich. 372.

It is claimed that plaintiffs by their participation in attempts at settlement waived their right to rescind. Plaintiffs promptly notified defendants of the fraud, and properly conserved the property as well as they could during the brief period pending attempts at settlement. We do not believe that their actions showed any intention to waive their rights, or that defendants in any way were injured by the short delay. See *Beloskursky* v. *Jozwiak,* 221 Mich. 316. A settlement to avoid litigation is always encouraged, and if no one is injured thereby during a short interval of negotiations, even if they come to naught, that is no waiver, provided, as in the present instance, there have been no acts indicating a waiver.

It is further claimed that defendants Mulkey should not be held liable. The circuit court commissioner, who heard the testimony, had the advantage of seeing the witnesses. Irrespective of this, however, when defendants Mulkey acknowledged in a contract the receipt of $44,553.40 when, as a matter of fact, only $6,000 had been paid to them, and they represented the entire consideration to be $120,000, when, as a matter of fact, it was only $82,000, or thereabouts, they became liable for any consequences resulting from their written misstatements. The case resembles that of *Hall-Doyle*

*Equity Co.* v. *Crook,* 245 Mich. 24. In that case, Mr. Justice SHARPE stated for the court as follows:

"It cannot well be said that if this fact be found plaintiff is not entitled to relief. While parties dealing with each other may indulge in 'seller's talk' as to the value of their respective properties, a false representation of a fact bearing thereon, relied upon by the purchaser, and which becomes an inducing cause of the contract made, is actionable on the ground of fraud. *Pratt* v. *Allegan Circuit Judge,* 177 Mich. 558. The holding in that case was cited with approval in the recent case of *German Bundesheim Society* v. *Schmidt,* 242 Mich. 139, and also in *Merlau* v. *Kalamazoo Circuit Judge,* 180 Mich. 393. In the latter case, one of the false representations relied on, and held to be actionable, was the statement of the defendant that he had sold the property on a land contract for $4,000 and received a payment of $1,500 thereon. Clearly, the plaintiff was entitled to relief against the estate of Mr. Blake and against Mrs. Blake.

"While there probably was no intent to defraud on the part of Mr. Crook, his unwarranted action made it possible for Blake to perpetrate the fraud upon the plaintiff. He could but have understood that Blake wanted this contract for the purpose of satisfying the plaintiff that the oral statement theretofore made by him was true. In *Stoney Creek Woolen Co.* v. *Smalley,* 111 Mich. 321, 324, it was said:

" 'Where one deliberately gives another a false statement in writing, knowing the purpose for which it is to be used, which that other uses to deceive a third party, he is a joint wrong-doer, and must be held responsible for the consequences which follow.'

"That Crook received no benefit from the fraud is no defense."

While we do not hold that defendants John C. Mulkey and Mulkey & Company had any wrongful

intent in placing misleading figures in the new contract, nevertheless, in so doing they became responsible for the unfortunate circumstances that followed and made themselves liable.

The decree of the lower court is affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.