JEMINSON v MONTGOMERY REAL ESTATE & COMPANY

OPINION OF THE COURT

1. MORTGAGES—MISREPRESENTATION—FRAUD—PLEADING.

A plaintiff who purchased a home from a real estate company and later signed a mortgage agreement with a mortgage corporation whereby the corporation loaned the plaintiff the purchase price in return for which the plaintiff executed a mortgage insured by FHA in favor of the mortgage corporation, who realized shortly after moving into her new home that the real estate company had fraudulently misrepresented the condition and value of the house and subsequently abandoned it as uninhabitable, and who brought suit alleging that, *inter alia,* the mortgage corporation knew that the whole transaction was unfair to the plaintiff, did not state a cause of action against the defendant mortgage corporation; the transaction was not unitary, but binary, where plaintiff first made and signed a purchase agreement with the real estate company and several weeks later, in an independent transaction, concluded a mortgage agreement with the mortgage corporation; any fraud or unconscionability attributable to the purchase agreement cannot be ascribed to a subsequent mortgage agreement which itself is neither fraudulent or unconscionable where for good and valuable consideration the mortgage corporation took a mortgage equal in value to the money advanced.

2. MORTGAGES—INSPECTION OF PREMISES—APPRAISAL.

There is no business reason why a mortgagee who is the beneficiary of a FHA mortgage insurance policy should go to the expense and trouble of inspecting the premises mortgaged because from a business point of view, once an insurance policy has been issued on a mortgage, the mortgagee has no interest whatsoever in an appraisal of the subject property; either the mortgage will be paid off by the mortgagor, or the mortgage

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 55 Am Jur 2d, Mortgages §§ 86–90.
[2] 55 Am Jur 2d, Mortgages §§ 268, 269, 863.
[4] 55 Am Jur 2d, Mortgages § 258 *et seq.*
[5] 55 Am Jur 2d, Mortgages § 1138.

will be in default and the subsequent foreclosure will either produce a sales price sufficient to pay off the mortgage, or the mortgagee may simply rely on his insurance and protect himself from loss in that way.

3. MORTGAGES—LAND SALES TRANSACTIONS—FRAUD.

A mortgagee is in no position to spread any losses due to fraudulent land sales transactions nor is the mortgagee in a particularly good position to prevent such losses; those parties most intimately involved in a real estate sales transaction, the vendor and vendee, are best able to diminish the number and size of losses from fraudulent sales.

4. MORTGAGES—MORTGAGE CORPORATION—DUTY.

A mortgage corporation has no duty to protect a party who purchases real property from a real estate company's cupidity.

DISSENT BY ADAMS, J.

5. MORTGAGES—MORTGAGE CORPORATION—SUMMARY JUDGMENT—MATERIAL QUESTION OF FACT.

*A summary judgment was improperly granted to a defendant mortgage corporation against a plaintiff purchaser of real property from a real estate company where the complaint sought rescission of a real estate purchase agreement as well as rescission of a mortgage note and mortgage and alleged that the defendant mortgage corporation knew plaintiff was receiving welfare assistance, was unemployed, had little formal education, and had little, if any, experience in commercial transactions, that the mortgage corporation knew the real estate company had a reputation for using unscrupulous and deceptive practices, that the mortgage corporation knew, or should have known through its investigation, the various facts charged to establish fraud by the real estate company, and therefore, it made itself an integral and necessary part of the fraudulent transaction when it entered into the mortgage loan agreement with plaintiff without warning her of her peril and imminent financial loss; the plaintiff had not failed, to state a claim upon which relief could be granted and the appellate courts of this state have repeatedly warned against the improper use of summary proceedings to preclude a party from his day in court (GCR 1963, 117.2[1]).*

Appeal from Wayne, Harry J. Dingeman, Jr., J.

Submitted Division 1 March 8, 1973, at Detroit. (Docket No. 13406.) Decided June 26, 1973. Leave to appeal granted, 390 Mich 788.

Complaint by Annie L. Jeminson against the Montgomery Real Estate and Company and the Michigan Mortgage Corporation for rescission of a purchase agreement and other agreements; reformation of the purchase agreement, mortgage note, and mortgage; restitution of monies; order that repairs be made to the property; order that a foreclosure sale of the property be set aside; and compensatory and exemplary damages. Summary judgment for defendant mortgage corporation. Plaintiff appeals by leave granted. Affirmed.

*Center for Urban Law & Housing (Wayne County Neighborhood Legal Services), by Michael J. Barnhart, Michael B. Bixby, Elizabeth A. Tushnet,* and *Michael G. Domonkos;* Wayne County Neighborhood Legal Services—Center II, by *Michael J. Hagedorn;* and Urban Law Clinic, University of Detroit Law School, by *John R. Urso,* for plaintiff.

*Perlman, Garber & Holtz,* for defendant Michigan Mortgage Corporation.

Before: J. H. GILLIS, P. J., and McGREGOR and ADAMS,* JJ.

McGREGOR, J. After the trial court's entry of summary judgment in favor of defendant mortgage corporation for failure of plaintiff to plead a cause of action as to it, plaintiff brings this delayed interlocutory appeal in forma pauperis by leave granted.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Because of the summary judgment aspects of this case, the well-pleaded allegations of the complaint are accepted as true. On July 24, 1970, plaintiff, one of the urban poor, agreed to purchase a home in the inner city of Detroit from defendant real estate company. On September 17, 1970, she signed a mortgage agreement with the defendant mortgage corporation whereby, pursuant to insurance coverage issued by the Federal Housing Administration, it loaned her the purchase price of $11,800 in return for which plaintiff executed a mortgage in favor of the mortgage corporation.

Shortly after she moved into her new home, plaintiff realized that defendant real estate company had fraudulently misrepresented the condition and value of the house. She abandoned the house as uninhabitable, whereupon the mortgage was duly foreclosed.

Plaintiff then commenced this suit in circuit court, alleging that, *inter alia,* defendant mortgage corporation was well aware, at the time it entered into the mortgage agreement with her, that her sole means of support was welfare assistance in the form of aid to dependent children, that she was unemployed, possessed of little formal education, and inexperienced in real property or other commercial transactions. Plaintiff further pleaded that defendant mortgage corporation also knew or should have known that the Montgomery Real Estate Company possessed a notorious reputation for using unscrupulous and deceptive practices in the sale of homes, especially older inner-city dwellings sold pursuant to FHA mortgage insurance programs, to inexperienced and unsophisticated buyers. Plaintiff, who is black, further alleges that defendant mortgage company knew that, due to private discriminatory housing practices, she

would have fewer opportunities to buy and less bargaining power than white persons similarly situated. She further charges that defendant mortgage corporation is also chargeable with knowledge that the property involved is located in an area where many of the homes are in an advanced state of deterioration. In addition, plaintiff contends that defendant mortgage corporation was or should have been aware that the sales transaction between plaintiff and the real estate company was unfair, fraudulent, or unconscionable; that defendant mortgage corporation should also have known that the real estate company was selling the subject premises to plaintiff at a price more than double the amount paid by the real estate company only a few months previously, and that the agreed sales price was considerably more than the value of the property; that defendant mortgage corporation should have known that the subject dwelling was not in a safe, decent and sanitary condition, was not in conformity with applicable building and health codes, and did not qualify under FHA regulations for financing; that representations made to the plaintiff by the real estate company concerning the condition of the property were materially untrue, and that the mortgage corporation should have known this.

On this appeal, plaintiff seeks reversal of the interlocutory order of the trial court, dismissing plaintiff's suit against defendant mortgage corporation for failure to state a cause of action.

Plaintiff discusses a line of cases from various jurisdictions denying holder in due course status to parties who accepted notes, mortgages, or other commercial paper in bad faith, or where a legal defect appeared on the face of the instrument, such as *Matthews v Aluminum Acceptance Corp,* 1

Mich App 570 (1965), which involved usurious interest rates and a deceptively procured signature.

Plaintiff's briefs and arguments urge upon this Court as correct and controlling the decision in *Conner v Great Western Savings & Loan Assn,* 69 Cal 2d 850; 73 Cal Rptr 369; 447 P2d 609 (1968). In that case, the lender had been intimately involved at every stage of a subdivision construction project, from financing the development to the making of loans to plaintiff purchasers secured by mortgages upon the dwellings. All plans and specifications had been examined and approved by the lender before construction began. Many of the homes proved defective and some of the purchasers brought an action against the developer and the lender seeking rescission and damages. Holding that the lender had been an "active participant" in the enterprise, and because the lender knew or should have known certain facts concerning the developer and the transaction, the Court found that the lender had a duty under the circumstances, which it owed to the individual purchasers, to exercise reasonable care to protect them from damages caused by major structural defects.

"If existing sanctions are inadequate, imposition of a duty at the point of effective financial control of tract building will insure responsible building practices." 69 Cal 2d 868; 73 Cal Rptr, 378; 447 P2d 618.

Plaintiff argues that the case at bar is analogous to *Conner.*

The question on appeal is whether the facts as pleaded constitute a cause of action in favor of the plaintiff against the defendant mortgage corpora-

tion, not whether those facts can be proved at trial.

It is apparent from the pleadings that the transaction in this matter was not unitary, but binary, in that plaintiff first made and signed a purchase agreement with the real estate company, and several weeks later, in an independent transaction, concluded a mortgage agreement with the mortgage company. These two transactions are distinct and disjoint and, therefore, any fraud or unconscionability attributable to the purchase agreement cannot be ascribed to the subsequent mortgage agreement. The mortgage agreement itself is neither fraudulent nor unconscionable; for good and valuable consideration, defendant mortgage corporation took a mortgage equal in value to the money advanced to the plaintiff.

*Conner v Great Western Savings & Loan Assn, supra,* cited by plaintiff, does not support her position. Great Western, the lender, negotiated with two developers with limited experience in tract construction to secure financing for the purchase of 100 acres of land and the construction thereon of 400 tract homes. The arrangement provided that Great Western would first buy the land, and then resell it to the developers at a profit, charging a high interest rate on the loan. A fee was charged for each individual home loan, while if a buyer obtained financing elsewhere, the developers were required to pay Great Western the fees obtained by the other lender. Great Western inspected at least once a week, and maintained the right to halt construction funds during the construction period if the work did not conform to plans and specifications. Great Western negligently failed to discover that the home designs were inadequate for the soil conditions;

within two years, numerous foundations cracked. In holding that all buyers and other lenders had a cause of action against Great Western, the California Supreme Court was careful to observe that such liability arose because the lender voluntarily assumed the duty to inspect, and had been involved in the overall transaction to a far greater extent than the usual money lender in such transactions.

The doctrine of "close connectedness", relied upon by plaintiff, is inapplicable to the case at bar. No such close relationship is sufficiently pleaded to bring that doctrine into play.

Even conceding the merits of litigation *pro bono publico,* plaintiff's position in the case at bar is untenable.

The issuance of FHA insurance on the mortgage in the case at bar is central to the overall transaction herein attacked by plaintiff. From a business point of view, once an insurance policy has been issued on a mortgage, the mortgagee has no interest whatsoever in an appraisal of the subject property. Either the mortgage will be paid off by the mortgagor, or the mortgage will be in default. In the latter event, foreclosure will either produce a sales price sufficient to pay off the mortgage, or the mortgagee may simply rely on his insurance, and protect himself from loss that way. Clearly, there is no business reason or well-pleaded allegations by the plaintiff why a mortgagee who is the beneficiary of a FHA mortgage policy should go to the expense and trouble of inspecting the subject premises.

In the instant case, the mortgagee had no real interest in the actual sales transaction. The mortgagee was merely a source of funds, and in the usual course of prudent business practice took a

mortgage for the sole purpose of securing its monetary advance to the plaintiff. Given the existence of an FHA insurance policy, the value of the collateral was inconsequential. Existence of the property subject to the mortgage was all that concerned the lender, since that alone, given FHA insurance, was sufficient completely to protect its investment. Plaintiff has pleaded no business reason why the mortgage corporation should have done more than it did.

In the spate of recent cases in which new duties and liabilities have been recognized, or old ones extended, the courts have consistently grounded their decisions on the theory that the person upon whom liability is sought to be imposed is in the best position to spread its losses to those who are benefited by the adverse consequences of their activities.

In the case at bar, the mortgagee is in no position to spread any losses due to fraudulent land sales transactions, nor is the mortgagee in a particularly good position to prevent such losses. Those parties most intimately involved in the sales transaction, the vendor and vendee, respectively, are best able to diminish the number and size of losses due to fraudulent sales. The mortgagee is not a beneficiary of the fraud, if any, which was allegedly perpetrated by the real estate company; all its profits came from the interest it charged on its loan. Any profits realized by the mortgagee because of the underlying fraud are too remote to form a basis for its liability.

Plaintiff has advanced no viable economic theory upon which to impose liability on the mortgage corporation; she must rely on established legal doctrines. But no established legal principle has been cited by plaintiff or discovered by this Court

that would warrant finding that defendant mortgage corporation had a duty to protect the plaintiff from the real estate company's cupidity.

Nor do the holder in due course cases add anything to plaintiff's argument. Those cases, applying the so-called "close connectedness" doctrine, differ radically from the case at bar. It may be conceded *arguendo* that, if the mortgage corporation were intimately affiliated with the real estate company, the real estate company's fraud could be chargeable against the mortgage corporation. However, even viewing the complaint in the light most favorable to the plaintiff, there is no allegation that the mortgage corporation acted as a subsidiary of the real estate company, or is the mortgagee of all property sold by the real estate company, or is otherwise somehow viewable as the alter ego of the real estate company.

Of the cases cited by plaintiff, several contain reasoning which serves to defeat plaintiff's assertion that she has a cause of action. For instance, in *Financial Credit Corp v Williams,* 246 Md 575, 229 A2d 712 (1967), the Court held that two things are necessary conditions precedent to the imposition of liability: (1) an extraordinary discount, and (2) knowledge, such as an infirmity obvious on the face of the instrument. *Matthews v Aluminum Acceptance Corp, supra.* The remaining cases cited by plaintiff involve factual situations in which the mortgagor's title was tainted as against his grantor. Those cases are thus self-distinguishing.

This Court finds that plaintiff does not have a cause of action, because of the relationship between the mortgage corporation and the real estate company, and well-established principles of equity as applied to fraud. Such liability would therefore not be after the fact.

It might be argued that, if the mortgage corporation did not extend a loan to the plaintiff because she was an uneducated black person, buying a house in an allegedly deteriorating neighborhood, it might incur some legal liability under the Federal Housing Administration Act.

Analysis of all the cases cited by both parties, and of additional cases discovered by this Court, discloses that, under the pleadings, no authority supports a cause of action against the Michigan Mortgage Corporation in the case at bar.

Affirmed.

J. H. GILLIS, P. J., concurred.

ADAMS, J. *(dissenting).* I dissent.
Judge McGREGOR states:

"It is apparent from the pleadings that the transaction in this matter was not unitary, but binary, in that plaintiff first made and signed a purchase agreement with the real estate company, and several weeks later, in an independent transaction, concluded a mortgage agreement with the mortgage company."

The final typed-in sentence of the purchase agreement reads as follows: "If purchaser is unable to obtain mortgage, deposit to be refunded less cost of credit report".

Count IV of plaintiff's first amended complaint alleges that defendant Michigan, as part of its normal pre-loan credit check on plaintiff, knew that plaintiff was receiving welfare assistance, was unemployed, had little formal education, and had little, if any, experience in any kind of commercial transactions. Count IV further avers that defendant Michigan knew, as a result of repeated business dealings with defendant Montgomery, that Montgomery was an experienced real estate com-

pany with a notorious reputation for using unscru-
pulous and deceptive practices. Finally, said count
alleges that defendant Michigan knew, or should
have known through its preliminary investigation,
the various facts charged to establish fraud by
Montgomery, and that since Michigan knew or
should have known all of these facts it made itself
an integral and necessary part of the fraudulent
transaction when it entered into the mortgage
loan agreement with plaintiff without warning her
of her peril and imminent financial loss. Count V
of plaintiff's first amended complaint contains sim-
ilar allegations and avers that defendant Michigan
disregarded its duty to warn plaintiff of her peril
or to refrain from taking any action which would
increase her danger.

Michigan's motion for summary judgment as to
plaintiff's first amended complaint, made pursuant
to GCR 1963, 117.2(1), is accompanied by the affi-
davit of Norman I. Leemon, President and Chief
Operations Officer of Michigan Mortgage Corpora-
tion. The affidavit is surplusage since the motion
was made to test whether plaintiff had failed to
state a claim upon which relief could be granted.[1]
*Meadows v Depco Equipment Co,* 4 Mich App 370
(1966). However, it may be noted that the affidavit
contains no statement whatsoever as to whether or
not Michigan obtained a pre-loan credit check on
plaintiff or as to whether it had had repeated
business dealings with defendant Montgomery or
as to the extent of the knowledge it had, or should
have had, of Montgomery's alleged fraud upon
plaintiff. The affidavit contends that Michigan had
no knowledge of any repairs to be made by Mont-
gomery, that it had no knowledge of the previous

[1] The trial court specifically granted Michigan's motion on the basis
of subrule 117.2(1).

price of the property, and that it is "an innocent third party and has not colluded in any way with any parties to cause plaintiff any damage whatsoever".

Judge McGregor states: "It may be conceded *arguendo* that, if the mortgage corporation were intimately affiliated with the real estate company, the real estate company's fraud could be chargeable against the mortgage corporation". Since the purchase agreement is specifically provisioned upon the securing of a mortgage, and in view of the serious allegations raised in plaintiff's complaint,[2] I am unable to conclude, as Judge McGregor does, that the transaction in this case was binary and not unitary and that plaintiff's pleadings failed to state a claim upon which relief could be granted. The appellate courts of this state have repeatedly warned against the improper use of summary proceedings to preclude a party from his day in court. *Durant v Stahlin,* 374 Mich 82 (1964); *Sun Oil Co v Rosborough,* 6 Mich App 176 (1967). I would reverse and remand for further proceedings.

[2] In evaluating defendant's motion for summary judgment, both at the trial and appellate levels, every well-pleaded allegation in the complaint is assumed to be true. *Bielski v Wolverine Ins Co,* 379 Mich 280 (1967).