RAMOS v HOLMBERG

Opinion of the Court

1. Mortgages—Duty of Mortgagee—Defects in Property.

No duty is imposed upon a mortgagee to disclose material defects in property being sold by the mortgagor.

2. Vendor and Purchaser—Land Contracts—Sale of Vendee's Interest—Defects in Property—Liability of Vendor.

A land contract vendor is not a necessary party to a sale of the vendee's interest, and even when the vendor enters into the transaction it is not necessary that he know the condition of the property; therefore a land contract vendor is generally not held liable for defects in property sold by his vendee.

3. Vendor and Purchaser—Land Contracts—Sale of Vendee's Interest—Defects in Property—Duty of Vendor—Obligation to Disclose.

A land contract vendor who has actual knowledge of defective conditions of the property may be held responsible for such defects to a purchaser of the vendee's interest if he has an obligation to disclose the information that he has; such obligation arises if the vendor takes an active part in the negotiations leading to the sale of the vendee's interest or if the vendor does not truthfully answer an inquiry from the purchaser as to the condition of the premises.

4. Vendor and Purchaser—Land Contracts—Warranties—Implied Warranty of Habitability—Opportunity to Eliminate Dangers.

An implied warranty of habitability cannot be used to hold a land

---

References for Points in Headnotes

[1] 55 Am Jur 2d, Mortgages § 87.

[2, 3, 6, 9] 77 Am Jur 2d, Vendor and Purchaser § 332.

[4] 77 Am Jur 2d, Vendor and Purchaser §§ 241, 335.

[5] 5 Am Jur 2d, Appeal and Error § 1053.

    73 Am Jur 2d, Summary Judgment § 40.

[6, 9] 73 Am Jur 2d, Summary Judgment §§ 17, 22, 23.

[7] 73 Am Jur 2d, Summary Judgment § 15.

[8] 61 Am Jur 2d, Pleading §§ 382–386.

contract vendor liable to a purchaser of the land contract vendee's interest in a home for defects in the premises where the house was in possession of the vendee and for that reason the vendor had no opportunity to eliminate the dangerous conditions.

5. APPEAL AND ERROR—JUDGMENT—SUMMARY JUDGMENT—PLEADINGS
—ALLEGATIONS.

The Court of Appeals, when determining if summary judgment was properly granted to a defendant, looks only at the pleadings and considers as true every well-pleaded allegation contained in the plaintiff's complaint.

6. VENDOR AND PURCHASER—LAND CONTRACTS—JUDGMENT—SUMMARY JUDGMENT—DEFECTS IN PROPERTY.

Summary judgment for failure to state a claim upon which relief can be granted was properly granted in favor of a land contract vendor where the plaintiff, a purchaser of the land contract vendee's interest in a defective house, failed to allege in his complaint either that plaintiff had questioned the vendor about the condition of the house or that the vendor had assumed an active part in the negotiations about the purchase of the house.

DISSENT BY M. J. KELLY, J.

7. JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE CLAIM.

*The question presented when a defendant moves for summary judgment for failure to state a claim is whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery.*

8. PLEADING—JUDGMENT—DISMISSAL—NOVEL THEORY OR CLAIM.

*A novel theory or claim requires a factual background for its review and therefore a court should be reluctant to dismiss such a claim on the basis of the pleadings alone, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.*

9. VENDOR AND PURCHASER—LAND CONTRACTS—JUDGMENT—SUMMARY JUDGMENT—DEFECTS IN PROPERTY—FRAUDULENT CONCEALMENT.

*Summary judgment in favor of a defendant land contract vendor was improper where the plaintiff purchaser of the land contract vendee's interest alleged defects in the house they purchased, because it is not certain, without being viewed against a factual*

*background, that a vendor, while releasing his vendee, can silently receive the promise of a new purchaser knowing that the purchaser is unaware of substantial defects in the premises he is acquiring; one who remains silent when fair dealing requires him to speak may be guilty of fraudulent concealment.*

Appeal from Ingham, Jack W. Warren, J. Submitted October 15, 1975, at Lansing. (Docket No. 22880.) Decided February 26, 1976.

Complaint by Philip Ramos and Julia Ramos against C. E. Holmberg, Helen Flury, Sam Saylor, Irene Saylor, Jack M. Ranck, and Helga A. Ranck for damages for breach of an implied warranty of habitability of a house purchased and for fraud. Summary judgment in favor of defendants Ranck. Plaintiffs appeal. Affirmed.

*David W. Sinclair,* for plaintiffs.

*Foster, Lindemer, Swift & Collins, P. C.* (by *Clifford D. Weiler),* for defendants Jack M. Ranck and Helga A. Ranck.

Before: McGREGOR, P. J., and D. E. HOLBROOK, JR. and M. J. KELLY, JJ.

D. E. HOLBROOK, JR., J. The Ramoses purchased a used house in Stockbridge from the Saylors in July, 1973. Four years earlier the Saylors had purchased the property from the Rancks on a land contract. All the negotiations that the Ramoses conducted about the "purchase" of the house were with the Saylors and Holmberg, a real estate agent with whom the Saylors listed the house. The Rancks only entered the transaction as vendors of the Saylors' land contract. Their consent to an assignment of the land contract to the Ramoses

was necessary to relieve the Saylors of liability on the contract.

The day that the Ramoses moved into the house the ceilings in the kitchen, the dining area and two bedrooms fell in. Subsequent investigation revealed that the ceilings were damaged when the old furnace in the house had blown up two to three years previously. In an effort to cover the damage, ceiling tile had been stapled to the old ceiling. In their deposition, the Saylors stated that the Rancks knew of this condition.

Shortly after moving in the Ramoses were forced to evacuate their newly purchased house because of the stench from the discharge of sewage into the basement. Investigation disclosed that the building's sewage emptied through a drain pipe to a nearby creek rather than to the village sanitary sewer system.[1] The person who sold the property to the Rancks testified in a deposition that he told the Rancks that he had installed the pipes to the creek. However, all notices concerning the hookup from the village were sent to the Saylors, not the Rancks.[2]

Subsequently the Ramoses filed suit against all the defendants. They alleged that the defendants had breached an implied warranty of habitability and that they had been defrauded and deceived by the failure to disclose the defects. The Rancks filed a motion for summary judgment under GCR 1963, 117.2(1), stating that they owed no duty to disclose any information to the plaintiffs. The trial court

---

[1] In 1964, the village of Stockbridge began planning a municipal sewer system. By 1970 a sewer had been constructed in the streets fronting the house in question. A village ordinance required buildings to be hooked up when sewer became available. Ordinance I of the Village of Stockbridge, art III, § 7 (1964).

[2] The notices concerning the sewer connection were to be sent to the "owners" of the property. Ordinance I of the Village of Stockbridge, art III, § 6 (1964).

granted the Rancks' motion for summary judgment and the plaintiffs have appealed as of right.

## I.

The first question we must confront is whether a land contract vendor owes a duty to disclose material defects in the property being sold by the land contract vendee. This Court has refused to impose a similar duty on mortgagees. *Jeminson v Montgomery Real Estate & Co,* 47 Mich App 731; 210 NW2d 10 (1973) *lv granted* 390 Mich 788 (1973). However, the case for holding a land contract vendor liable is stronger. In the case of a mortgage, the mortgagee only receives a lien on the property. Furthermore, in many cases there is private or governmental insurance to pay off the debt if the mortgagor is unable to. Thus the mortgagee is not inclined to view the property as his only source of protection in case of default. *Jeminson v Montgomery Real Estate & Co, supra* at 738–739. On the other hand, with a land contract the vendor retains legal title to the premises. The vendor has only the property as security so there is a greater likelihood that he will take an interest in how the vendee maintains the property. *Cf. Sokolowski v Peoples Savings & Loan Association of Battle Creek,* 23 Mich App 609, 614; 179 NW2d 197 (1970).

Even though the land contract vendor has a greater interest in the property in sales by the vendee than a mortgagee does, like the mortgagee the land contract vendor is not a necessary party to a sale of the vendee's interest. It is possible for the original vendee and the new purchaser to enter into a new land contract and leave the initial contract in force or that the new purchaser will pay cash and eliminate the contract. In such a

situation, to hold the land contract vendor liable for defects in the property would render him an insurer without giving him any reasonable opportunity to prevent the loss. *Jeminson v Montgomery Real Estate & Co, supra* at 739–740, *Mortgage Associates, Inc v Monona Shores, Inc,* 47 Wis 2d 171; 177 NW2d 340, 350 (1970).

Similarly, the fact that the original land contract vendor enters the transaction should not give rise to automatic liability. In many cases, the only act that is required for the land contract vendor to perform is consent to the assignment of the contract, thereby relieving the selling vendee of further liability under the land contract. To perform this act it is not necessary for the land contract vendor to know of the condition of the premises. In such a situation, his basic concern is with the financial acceptability of the new purchaser since his consent to the assignment operates as a novation as to the vendee's liability. *Chicago Boulevard Land Co v Nutten,* 268 Mich 541; 256 NW 541 (1934). Furthermore, it is often the case that the land contract vendor does not have the opportunity to know of defects in the premises since he has parted with control over the premises some time previous.

However, if the original land contract vendor does know of the defective conditions a different situation arises. When he has actual knowledge of the defective conditions the land contract vendor may be held responsible. He can gain this knowledge in various ways, such as from observations he has made while in control of the premises or from discussions with the vendee or through observations made while visiting the vendee.

Before the land contract vendor should be held liable though, he must have an obligation to dis-

close the information that he has. If he takes an active part in the negotiations leading up to the basic transaction this obligation will arise. In such a case the land contract vendor is acting in more than a financial capacity. See *Connor v Great Western Savings & Loan Ass'n,* 69 Cal 2d 850; 73 Cal Rptr 369; 447 P2d 609; 39 ALR3d 224 (1968). It will also arise if the purchaser directly inquires of the original vendor as to the condition of the premises. If the land contract vendor does not truthfully answer such an inquiry to the best of his knowledge, then he has aided and abetted a fraud on the purchaser. *Sweet v Shreve,* 262 Mich 432, 433; 247 NW 711 (1933), *Hubar v Hartman Finance Corp,* 256 Mich 602, 604; 240 NW 77 (1932).

## II

Plaintiffs also claim that used homes should be covered by an implied warranty of habitability. In this state new homes are covered by an implied warranty of habitability. *Weeks v Slavik Builders, Inc,* 24 Mich App 621; 180 NW2d 503 (1970), *aff'd,* 384 Mich 257; 181 NW2d 271 (1970). The doctrine of implied warranty has been applied to used goods. *Kaufman v Katz,* 356 Mich 354, 365–367; 97 NW2d 56 (1959).

While it may seem logical to apply the implied warranty concept to used housing, we need not decide this issue in this case. An implied warranty runs from a seller to those in privity with them. *Cf.* MCLA 440.2318; MSA 19.2318. However, privity of contract is not required in Michigan. *Bahlman v Hudson Motor Car Co,* 290 Mich 683, 694; 288 NW 309 (1939), *Schultz v Tecumseh Products,* 310 F2d 426, 429 (CA 6, 1962). But in this case the

Rancks are not the sellers. To hold the Rancks liable would flout the principle behind the theory of implied warranties: namely, to encourage parties to eliminate dangers. While the Saylors lived in the house the Rancks had no opportunity to eliminate dangerous conditions.

### III

Having established that the Rancks owed the Ramoses a legal duty to disclose defects that they knew of if they took an active part in the negotiations or if they falsely answered questions put to them by the Ramoses concerning the conditions of the premises, we now turn to the final question. Was the summary judgment properly granted under GCR 1963, 117.2(1)? In determining if summary judgment was properly granted we look only at the pleadings. We also consider as true every well pleaded allegation contained in the plaintiffs' complaint. *Bielski v Wolverine Insurance Co,* 379 Mich 280, 283; 150 NW2d 788 (1967), *Blurton v Bloomfield Hills Board of Education,* 60 Mich App 741, 742; 231 NW2d 535 (1975).

In reviewing plaintiffs' complaint we find allegations that the Rancks knew of the defects in both the sewer system and the ceiling. We also find there are allegations that the Rancks took part in the transaction to some formal minimum degree. However, we fail to find any allegation that the Ramoses questioned the Rancks at all about the condition of the house or that the Rancks assumed an active part in the general negotiations about the purchase of the house. Since the plaintiffs have failed to allege facts, which even if true state a claim upon which relief can be granted, summary judgment under GCR 1963, 117.2(1), was

properly granted. *Martin v Fowler,* 36 Mich App 725, 728; 194 NW2d 524 (1971).

Affirmed. Costs to defendants-appellees.

McGREGOR, P. J., concurred.

M. J. KELLY, J. *(dissenting).* This Court has previously stated that the question presented when a defendant moves for summary judgment for failure to state a claim is "whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery". *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972). The trial court erred in answering this question in the affirmative.

Plaintiff's complaint against the defendant Rancks places before the court a novel theory of liability. It is the novelty of the claim that requires a factual background for its review.

"The Court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." 5 Wright & Miller, Federal Practice & Procedure, § 1357, p 603, quoted in *Crowther, supra,* 42 Mich App at 430.

It need not be decided at this point that plaintiff may be entitled to recovery, but only whether plaintiff's claim is so untenable that to allow him to proceed further would be to encourage an exercise in futility.

Plaintiff's claim is that defendant, by failing to tell him about significant defects in the home he was purchasing, has, along with others, harmed

him and so defendant should share in the liability for that harm.

Numerous Michigan cases have declared that, in certain instances, failure to disclose material facts can be actionable fraud. See *e.g. Sullivan v Ulrich,* 326 Mich 218; 40 NW2d 126 (1949), *Walker v Walker,* 330 Mich 332; 47 NW2d 633; 31 ALR2d 1250 (1951), *Nowicki v Podgorski,* 359 Mich 18; 101 NW2d 371 (1960). Several cases have also ruled that a vendor, even one with innocent intentions, could be liable to an assignee for fraud. *Hall-Doyle Equity Co v Crook,* 245 Mich 24; 222 NW 215 (1928), *Holbrook v Blick,* 256 Mich 396; 240 NW 26 (1932), *Sweet v Shreve,* 262 Mich 432; 247 NW 711 (1933).

Defendants, in support of their position that they owed no duty of disclosure to plaintiffs, point to the recent case of *Jeminson v Montgomery Real Estate & Co,* 47 Mich App 731; 210 NW2d 10 (1973), *lv granted,* 390 Mich 788 (1973). Since their only interest in the transaction was, defendants say, as a holder of a security interest in the premises sold, their position is similar to the mortgagee in *Jeminson.*

But in *Jeminson,* the sale and the financing of the property was characterized as "not unitary, but binary, in that plaintiff first made and signed a purchase agreement with the real estate company, and several weeks later, in an independent transaction, concluded a mortgage agreement with the mortgage company". 47 Mich App at 737. The transaction giving rise to this plaintiff's claim cannot be called "binary". In a single transaction the plaintiffs purchased the Saylors' interest, with the Rancks' consent, and accepted all of the Saylors' obligations under the contract. The transfer and acceptance was the consideration for the

Rancks' release of the Saylors. A single document evidences this novation. It is also significant that the Saylors could not transfer or assign their interest without the Rancks' consent.

I am unable to state with certainty that a vendor, while releasing his vendee, can silently receive in exchange the promise of a new purchaser knowing that the purchaser is unaware of substantial defects in the premises he is acquiring.

."It is also true that one who remains silent when fair dealing requires him to speak may be guilty of fraudulent concealment." *Nowicki v Podgorski, supra,* 359 Mich at 32.

I recognize the novelty of plaintiff's claim against the Rancks, but it is because of its novelty that the claim deserves to be viewed against a factual background. For this reason I find the lower court's grant of summary judgment improper.