173 N.W.2d 378 (1969)
185 Neb. 4
FARMERS ELEVATOR MUTUAL INSURANCE COMPANY, a Corporation; and Farmers Cooperative Association, nonstock of Big Springs, Nebraska, Appellants,
v.
AMERICAN MUTUAL LIABILITY INSURANCE CO., a Corporation; and Empire Fire & Marine Ins. Co., a Corporation; and Wilmac Construction Company, Appellees.
No. 37254.
Supreme Court of Nebraska.
December 19, 1969.
*381 Craig, Woodruff & Hanley, Omaha, Crosby & Nielsen, North Platte, Craig & Craig, Jack E. Horsley, Mattoon, Ill., for appellants.
Knapp, Tarrell & State, Kearney, Walsh, Walentine, Miles & Katskee, Omaha, for appellees.
Heard before WHITE, C. J., and CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ.
CARTER, Justice.
This is a declaratory judgment action brought by the Farmers Elevator Mutual Insurance Company and the Farmers Cooperative Association of Big Springs, Nebraska, against the American Mutual Liability Insurance Company, the Empire Fire and Marine Insurance Company, and the Wilmac Construction Company to determine the insurance coverage of Empire Fire and Marine Insurance Company and to recover from the latter the full amount of a judgment in the federal district court of Nebraska against Wilmac Construction Company, including the amount of the judgment in excess of policy limits. The trial court found that there was a contract of insurance between the Wilmac Construction Company and the Empire Fire and Marine Insurance Company, that adequate notice of the accident and injury giving rise to the litigation was given to the Empire Fire and Marine Insurance Company, and that, under the exclusionary provisions of the policy, there was no coverage. Judgment was entered for the defendants and the plaintiffs have appealed.
For convenience we shall hereafter refer to the Farmers Elevator Mutual Insurance Company as Farmers Elevator Mutual; to Farmers Cooperative Association as Farmers Co-op; to American Mutual Liability Insurance Company as American Mutual; to Empire Fire and Marine Insurance Company as Empire; and to the Wilmac Construction Company as Wilmac.
Farmers Co-op was the owner of a grain elevator facility at Big Springs, Nebraska. In the fore part of 1960, it entered into a written contract with Wilmac for the remodeling of the existing elevator and for the renovation of other portions of the facility. After the contract was entered into and on October 19, 1960, one Arthur C. Strand, an employee of Wilmac, was seriously injured by a fall from a defective ladder. American Mutual had in force a workmen's compensation and liability policy of insurance with Wilmac. Workmen's compensation was adjusted and paid by a lump sum settlement. Wilmac contended that it had a comprehensive general liability policy with Empire which the latter denied. However, in the course of the trial, Empire admitted in open court and later by an amended pleading, that it had a policy of insurance in force, but denied there was any coverage under the terms of the policy.
The litigation in this case originated as the result of a fall from a defective rung in a ladder furnished by Farmers Co-op to Wilmac. Wilmac contributed to the accident by removing the defective rung and permitting its use by Strand with the missing rung. American Mutual paid its liability as the compensation carrier. On January 14, 1964, Strand filed an action in the federal district court against Farmers Co-op and American Mutual in which action a third party complaint was filed against Wilmac by Farmers Co-op. The original action and the third party complaint were separately tried. On October 28, 1965, Wilmac filed an anwser to the Strand complaint setting up the right of subrogation to the amounts paid under the workmen's compensation law. In the original action, the jury returned a verdict for $200,000 and a judgment was entered thereon on May 16, 1966, which was affirmed on appeal. In the suit of Strand v. Farmers Co-op in the federal district court, neither Wilmac nor Empire was a party. In the third party complaint, Wilmac, but not Empire, was a party.
*382 The third party complaint was filed by Farmers Co-op, the third party plaintiff, against Wilmac, the third party defendant. An answer to the third party complaint was filed on behalf of Wilmac on August 21, 1964. On May 8, 1968, a settlement was made between Farmers Co-op and American Mutual in which American Mutual paid Farmers Co-op $5,000 for an agreement that Farmers Co-op would not prosecute any claims against it on any judgment rendered on the third party claim, American Mutual having included a general liability provision in the workmen's compensation policy. On May 27, 1968, Wilmac, by its president, consented to the entry of a judgment against it in the amount of $272,955.74. On May 28, 1968, Empire upon discovery of the entry of the consent judgment moved to intervene asserting an understanding with counsel that the case would not be called up prior to the trial of the instant case in the district court for Douglas County without notice. On June 5, 1968, the consent judgment was vacated. On June 14, 1968, the consent judgment was again entered in the federal district court which was after the trial of the present case in the state district court.
On October 15, 1965, this action for a declaratory judgment was filed in the district court for Douglas County which, after hearing, found that Empire's policy of general liability insurance contained no coverage for the accident to Strand.
No policy of insurance issued by Empire to Wilmac was in existence at the time of the trial of this case. The evidence shows that Empire suffered a fire which destroyed its old storage file area, including any insurance policies or records pertaining to Wilmac. The soliciting agent for Empire testified that he destroyed his files after 4 years in accordance with his custom. Wilmac filed a petition in bankruptcy in 1962 and appears to have been unable to produce an insurance policy. It was established, however, that a policy issued in 1961 contained the same coverage, conditions, and exclusions as the 1960 policy.
The insuring clause of the policy applicable here provided: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." The exclusionary provisions relied upon state: "This policy does not apply: (a) to liability assumed by the insured under any contract or agreement except under coverages B and D, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products; * * * (h) under coverage B, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured; * * *." It is the contention of Empire that the foregoing provisions exclude liability in the instant case. It is the contention of Farmers Co-op and Wilmac that the provisions provide coverage but, in any event, liability attaches as a matter of law and that the exclusions are wholly immaterial to the resolution of the instant case.
Attached to the policy of insurance is a rider which defines a contract within the meaning of the contract of insurance as follows: "The word `contract' means, if in writing (1) any easement agreement, except in connection with a railroad grade crossing, (2) any agreement required by municipal ordinance, except in connection with work for the municipality, (3) any elevator or escalator maintenance agreement or (4) any lease of premises agreement." With reference to the coverage of independent contractors and contracts as defined in condition 3, the policy in each instance stated: "None At InceptionPremiumIf AnyTo Be Determined by Audit." As to products hazards, the policy stated: "ExcludedL6355a Attached."
*383 We point out that Wilmac was in the construction business in which it contracted to construct, repair, and maintain business facilities. Ofttimes contracts for such work were not in existence when the insurance policy was issued and consequently no basis existed for determining the premium rate on the issuance of the policy. In such cases the classification of work and the premium rate therefor were shown. Such work is covered by the policy and the premium rate for such work determined at the end of the policy year. Hence the significance of the description of the hazards covered and the rating classification therefor, although they do not have the effect of modifying the exclusions in the policy. The definition of "contract" contained in the policy does not purport to exclude such work from the coverage of the policy. It did not state that it was excluded as it did in the case of products and completed operations which was admittedly intended to be excluded. Instead of excluding such coverage, it stated there was none at the inception of the policy by clearly indicating if contracts or independent contractors came into being after the issuance of the policy, they would be covered and the additional premium would be paid after audit at the close of the policy year. The president of Wilmac and the soliciting agent for Empire each testified that this is what they intended the insurance policy to mean and we find that this is what it does mean.
The evidence is that the coverage was audited and premium paid. Since coverage is found to exist, no reason exists for any discussion of the right to reform the policy. The meaning of the policy is to afford coverage under the insuring clause of the policy for all damages because of accident chargeable to the insured. The construction of the policy is consistent with the intention of the parties and it should be so construed in establishing its meaning where the language used is subject to such interpretation. Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N.W.2d 133; Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N.W.2d 874; Rathbun v. Globe Indemnity Co., 107 Neb. 18, 184 N.W. 903, 24 A.L.R. 191.
It is contended by Empire that the employee exclusion contained in paragraph (h) heretofore quoted excludes any liability for injury, sickness, disease, or death of any employee of Wilmac, the pertinent exclusionary language being: "except with respect to liability * * * to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured."
In 12 Couch on Insurance (2d Ed.), s. 44:477, p. 47, it is said: "Where a contractor executed an agreement with his customer which provided that the contractor should maintain such accident and liability insurance as would protect the contractor and the customer from claims for damage for personal injuries arising from the operations under the agreement, and subsequently two of the contractor's employees were injured on the job and recovered judgments against the customer on the basis of negligence, there was no coverage afforded the contractor when the customer sought recovery of such judgments under the contractor's general liability policy, which excluded coverage as to liability assumed by the insured under any contract or agreement and for injuries to employees of the insured. "In 1 Long, The Law of Liability Insurance, s. 10.17, pp. 10-26 and 10-27, it is said on the same question: "The exclusion in the first paragraph is intended to relieve the insurer of any liability under the laws mentioned therein; while the second exclusion is broader in scope and is calculated to preclude any claim against the insurer for damages for bodily injuries sustained by an employee of the insured arising out of and in the course of employment, except with respect to the assumption of liability by the insured under a contract as defined in the policy."
*384 In Davis v. Liberty Mutual Ins. Co., 308 F.2d 709 (8th Cir., 1962), Van Pelt, J., speaking for the court in a similar case said: "Reading the entire policy we conclude that it is clear that the policy did not include within its protection either injury to or death of appellant's husband when injured in the course of his employment with the insured employer." See, also, Maryland Cas. Co. v. Waumbec Mills, 102 N.H. 200, 152 A.2d 619.
It is contended by Empire that the Nebraska Workmen's Compensation Law is an exclusive remedy for the injuries sustained by an employee and that such exclusiveness of remedy insulates the employer from liability from contribution or indemnity in favor of a third person against whom the employee has recovered a judgment for injuries sustained while in the course of his employment. Wilmac carried compensation insurance with American Mutual and it paid the compensation liability due Strand in the amount of $36,480. This liability was not based on the negligence of Wilmac, it is one imposed by law with or without fault. In addition to carrying compensation insurance with American Mutual and a general comprehensive liability provision as well, Wilmac had a general comprehensive liability policy with Empire. The policy contained no express provision for indemnity covering Farmers Co-op or its liability insurance carrier. The basis of the tort liability of Farmers Co-op seems important here in view of the claim of Farmers Co-op for indemnity for the judgment obtained against it by Strand in the federal district court. The evidence on which the judgment against Farmers Co-op was obtained supported findings that it was dark in the headhouse at the time of the accident; that Farmers Co-op failed to provide adequate light; that the elevator was being used on the day of the accident resulting in the accumulation of dust making the ladder slippery; that the dust was inadequately controlled; and that Farmers Co-op had control of the premises, failed to provide a place of safety, and made no effort to correct the defective condition of the ladder. The evidence supported the allegations of Farmers Co-op's negligence and dissipates the claim that the negligence of Farmers Co-op was technical, constructive, vicarious, or passive and not active and primary.
The contract for the construction and repair work entered into between Farmers Co-op and Wilmac provided: "Contractor shall further save and hold harmless the owner from any claim, liability, action, or cause of action arising out of the performance of this contract based upon the negligence of the contractor, his agent or employees. Said contractor shall save and hold harmless the owner from payment of any and all taxes, workmen's compensation, and any other amount due workmen or other persons employed by the contractor either as employees or subcontractors." The hold harmless provision appears to impose liability on Wilmac to indemnify Farmers Co-op for any damages accruing to it caused by Wilmac's negligence. But Empire refused to assume this obligation assumed by Wilmac by specifically excluding any such coverage in the insurance policy issued to Wilmac irrespective of Wilmac's agreement with Farmers Co-op.
Considering first the above-quoted provision of the contract between the contractor and the owner, assuming the inapplicability of the exclusionary clause in Wilmac's policy, the proper interpretation of this provision places Wilmac in one of two categories: Either Wilmac is free from negligence, or it is a joint tort-feasor with Farmers Co-op as regards the accident. If Wilmac is free from negligence, there is, of course, no liability under the contractual provision. If Wilmac is a joint tort-feasor, the law governing joint tort-feasors controls the disposition of the case. The consent judgment in the federal district court, which has become final, and the evidence which supports it shows that Wilmac and Farmers Co-op are joint tort-feasors and joint wrongdoers. In any event, the assumed liability of Wilmac is *385 excluded by the exclusionary provision excepting from its coverage any liability assumed by any contract not specified in the policy, as provided by exclusion (a) thereof.
It is the contention of Empire that there can be no contribution or indemnity among joint tort-feasors. Empire cites Slattery v. Marra Bros., Inc., 2 Cir., 186 F.2d 134, wherein it is said: "Therefore, the right of Marra Bros., Inc., to indemnity from the Spencer Company cannot rest upon any liability of that company to Slattery; and, if it exists at all, it is hard to see how it can arise in the absence of some legal transaction between the two corporations, other than that of joint tortfeasors: * * *. Yet it is true, at least when the putative indemnitor is not protected by a compensation act, that courts have at times based indemnity merely upon a difference between the kinds of negligence of the two tortfeasors; as for instance, if that of the indemnitee is only `passive,' while that of the indemnitor is `active.' Such cases may perhaps be accounted for as lenient exceptions to the doctrine that there can be no contribution between joint tortfeasors, for indemnity is only an extreme form of contribution. When both are liable to the same person for a single joint wrong, and contribution, stricti juris, is impossible, the temptation is strong if the faults differ greatly in gravity, to throw the whole loss upon the more guilty of the two. * * * We cannot, however, agree that that result is rationally possible except upon the assumption that both parties are liable to the same person for the joint wrong. If so, when one of the two is not so liable, the right of the other to indemnity must be found in rights and liabilities arising out of some other legal transaction between the two. However, in the case at bar, not only was the Spencer Company not liable to Slattery, but it had no contract with Marra Bros., Inc., or any other legal relation with it except that of joint tortfeasor. Unless therefore there be some controlling authority to the contrary, the amended complaint was rightly dismissed."
Whether or not a technical, constructive, or passive joint tort-feasor is entitled to contribution or indemnity from an active and primary joint tort-feasor is not of importance here in view of our holding that both tort-feasors were active wrongdoers. This court does not appear to have passed on the question of indemnity to a passive joint tort-feasor against an active one and we find no reason to decide that question here. Both joint tort-feasors being active wrongdoers, contribution or indemnity cannot be maintained by one against the other. See, United States Fidelity & Guar. Co. v. Virginia Eng. Co., 4 Cir., 213 F.2d 109, 63 A.L.R.2d 1114; Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Shell Oil Co. v. Hercules Const. Co., 74 Ill.App.2d 166, 219 N.E.2d 392. This conclusion makes it unnecessary to determine the effect of the workmen's compensation act as it applies to the present situation.
It is contended by Wilmac that Empire refused to defend the third party complaint brought in the federal court by Farmers Co-op. It will be observed that Strand was not a party to the third party complaint. The third party complaint was filed on June 24, 1964. Demand was subsequently made by the president of Wilmac on Empire to defend the action for Wilmac. On January 14, 1965, Empire informed the trustee in bankruptcy of Wilmac that it would defend the action if the trustee would execute a reservation of rights agreement protecting Empire against a waiver of its defense of noncoverage under its comprehensive liability policy with Wilmac. The trustee refused to execute a reservation of rights agreement. The record shows that an answer was filed in the case for Wilmac by an attorney procured by American Mutual. The record shows that immediately following the taking of the first consent judgment, Empire *386 sought to intervene in the case. This was evidently permitted as is indicated by the vacation of the consent judgment of May 27, 1968. On June 14, 1968, the consent judgment was reentered, Wilmac consenting thereto by its president although it was a dissolved and bankrupt corporation.
It should be noted here that Wilmac offered to settle the third party claim with Farmers Co-op for $272,955.74, evidently the amount then due on the $200,000 judgment in the federal district court and indicating a willingness to confess judgment for this amount. Farmers Co-op accepted the offer. This resulted in the consent judgment heretofore mentioned. The authority of the president of Wilmac to confess judgment in the amount of $272,955.74 against the dissolved and bankrupt Wilmac corporation is not an issue in the case.
Two agreements between Farmers Co-op and American Mutual appear in this record in which it is stated that Empire and American Mutual each had a liability policy with Wilmac in which each had an obligation to defend Wilmac. It was stated that each had a liability to pay any amount recovered against Wilmac on the third party complaint. For a consideration of $5,000, Farmers Co-op agreed in effect to relieve American Mutual from liability in the case at bar. Farmers Co-op's contract was not to release or satisfy its claim, but to not pursue or make claims against American Mutual on account of any judgment on the third party complaint filed and then pending in the federal district court.
It is on the foregoing facts that counsel for Empire contends that the transactions enumerated constitute an attempt to cast the burden of the $272,955.74 judgment on Empire because of the alleged breach of the contract to defend contained in Empire's general comprehensive liability policy.
The policy issued by Empire to Wilmac contained the following provision: "With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."
The duty to defend under such a provision has been recently stated by this court as follows: "An insurer's duty to defend an action against the insured is measured in the first instance by the allegations of the pleadings in the action against the insured, and if such pleadings state facts bringing the injury within the coverage of the policy, insurer must defend irrespective of the insured's ultimate liability to the plaintiff." National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821. See, also, Lee v. Aetna Casualty & Surety Co., 2 Cir., 178 F.2d 750; Danek v. Hommer, 28 N.J.Super. 68, 100 A.2d 198, affirmed in 15 N.J. 573, 105 A.2d 677.
There is evidence in the record that demand was made upon Empire by Wilmac to defend Farmers Co-op in the action brought against it by Strand. But we fail to see how Empire had any duty to defend Farmers Co-op since the latter was not an insured under Empire's policy. The demand by Wilmac that Empire defend Wilmac in the third party complaint in which Farmers Co-op was the third party plaintiff and Wilmac the third party defendant is an altogether different question. While we have found that Farmers Co-op is not entitled to be indemnified by Wilmac's insurer, Empire, the demand of Wilmac to be defended by Empire rests on the policy agreement to defend Wilmac, "even if such suit is groundless, false or fraudulent."
The general liability policy issued to Wilmac by American Mutual contained the following provision relating to its duty to defend: "As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any proceeding against the insured seeking such benefits *387 and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."
It is apparent that both American Mutual and Empire had a mutual obligation to defend Wilmac on the third party complaint on each of the general liability provisions in their respective policies. Empire did offer to defend Wilmac if Wilmac's trustee in bankruptcy would sign a reservation of rights protecting Empire against any waiver of its claim that there was no coverage under its policy. The trustee in bankruptcy refused to sign such proposed reservation agreement. The evidence shows, however, that American Mutual did defend Wilmac as shown by the following: American Mutual's legal counsel employed an otherwise disinterested attorney to file an answer for Wilmac to the third party complaint. Counsel for American Mutual approved the form of the consent judgment which was signed by Wilmac and its president, Wilson. The consent judgment was entered the day that the trial in the declaratory judgment action was commenced in the district court for Douglas County. This judgment was vacated and reentered on June 14, 1968, as hereinbefore recited. This gives substance to the contention of Empire's counsel that Wilmac was defended by American Mutual as its policy required and that Wilmac suffered no damage because of its failure to defend. It gives substance, also, that the manner of defending Wilmac by American Mutual was nothing more than an attempt to provide a fund from which Farmers Co-op and American Mutual could recover by subrogation the amounts of compensation paid and any loss under its general liability provisions by indemnity from Empire.
The duty of an insurance company to defend pursuant to its policy contract requires the utmost good faith on its part. Likewise, a demand that an insured be defended under such a contract provision requires that the demand be in good faith. Its purpose is to protect the insured from the expenses and costs of the litigation as well as other liabilities for which it could be held. It operates as a shield for the protection of the insured and not as a sword to impose liability where none otherwise exists. The failure of Empire to defend caused no damage because Wilmac was defended by American Mutual which was obligated to so do. It is plain that Empire had no duty to defend when a defense was supplied by another having the same obligation. If Wilmac suffered any loss, it was due to the failure of American Mutual to fulfill its duty to defend in good faith. Under the situation here, it would be unconscionable to impose liability on Empire to the advantage of American Mutual for a claimed damage which it was obligated, if possible, to avoid. We find no merit in the contention that any damage resulted from Empire's failure to defend the third party complaint.
We have examined other claimed errors and find that they have no merit. The judgment of the district court is correct and it is affirmed.
Affirmed.