ROYAL INDEMNITY COMPANY, A CORPORATION, APPELLANT, v. AETNA CASUALTY AND SURETY COMPANY, A CORPORATION, ET AL., APPELLEES.
229 N. W. 2d 183

Filed May 15, 1975. No. 39603.

Harry B. Otis of Gaines, Spittler & Otis, for appellant.

John R. Douglas of Cassem, Tierney, Adams & Henatsch, for appellee Aetna Cas. & Sur. Co.

Harry L. Welch of Gross, Welch, Vinardi, Kauffman & Day, for appellees Iowa Nat. Mut. Ins. Co. and Fitzwater.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

The underlying facts in the three cases which give rise to this appeal are set out in the opinion of this court in Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N. W. 2d 523 (1973), and will not be repeated here.

The appeal in this case is from an order of the District Court sustaining the separate demurrers filed by the respective defendants to the petition in an action filed by the plaintiff, Royal Indemnity Company, the liability carrier of Yale & Towne, Inc., one of the defendants in the action previously referred to. The present action was instituted for the purpose of recovering contribution from Aetna Casualty and Surety Company, insurance

carrier for L & M Paper Company; from Iowa National Mutual Insurance Company, the insurance carrier for Phil D. Fitzwater, and from Phil D. Fitzwater individually, who was the only insured made a party to the action. In Libbey-Owens Ford Glass Co. v. L & M Paper Co., *supra*, however, the insured defendant was there designated as "Phil D. Fitzwater and Gerald E. Gathmann, doing business as All Makes Forklift Service." It appears that Gerald E. Gathmann has since died, but the administratrix of his estate Roberta J. Gathmann, was not made a party defendant.

In its petition in this case, Royal Indemnity sets out the relationship between the respective insurance carriers and their insureds, and alleges that a consolidated jury trial was held in three separate actions, in which the respective plaintiffs were Henningsen Foods, Inc., O. J. Miller, and Libbey-Owens Ford Glass Company. Plaintiff alleges that on December 22, 1971, following the jury trial in which defendants Aetna and Iowa actively participated, three separate judgments in favor of the above-named plaintiffs were entered against all the defendants in those actions. The jury found that all the defendants were guilty of active negligence proximately causing plaintiffs' damages. The petition further alleges that the jury returned verdicts in favor of Henningsen Foods, Inc., in the amount of $380,596.88 in favor of Libbey-Owens Ford Glass Company in the amount of $43,434.47; and in favor of O. J. Miller in the amount of $45,000. Plaintiff alleges that the defendants in that former case thereafter unsuccessfully appealed to the Supreme Court of Nebraska, following which the several plaintiffs instituted proceedings to collect the judgments from Royal Indemnity alone by way of garnishment proceedings against the plaintiff. Plaintiff then alleges that it has fully discharged the obligations of its insured by paying the judgments in full and is therefore subrogated to the rights of its insured against the other joint tort-feasor judgment debtors. It alleges it is equit-

ably entitled to be reimbursed by L & M Paper Company, through its insurance carrier, Aetna, and by Phil D. Fitzwater, individually and through his insurance carrier, Iowa, in the amount of one-third from each, of the total amount of the judgments and accrued costs paid by it; and plaintiff therefore prays for judgment against the defendant, Aetna, for the amount of $173,437.67; and against the defendants, Iowa, and its insured, Phil D. Fitzwater, for the same amount.

The three defendants separately demurred to the petition of Royal Indemnity. Following a hearing on the matter, the District Court determined that each of the separate demurrers should be sustained. The court thereupon entered an order dismissing plaintiff's petition. Plaintiff's motion for rehearing was overruled, and it then perfected its appeal to this court.

The issues in this action, raised by the separate demurrers of the above-named defendants, were whether or not there may be contribution between joint tortfeasors in Nebraska, and also whether the direct action by plaintiff against the liability insurance carriers in this case is permissible. The demurrers also allege a defect of parties defendant to the action.

This case necessitates an examination and determination of the present status in Nebraska of the frequently annouced rule that there can be no contribution between joint wrongdoers or tort-feasors, and that one of several persons who become liable to another for a wrong cannot enforce contribution from his cowrongdoers, although he is compelled to discharge the whole or more than his share of such liability; and particularly whether that doctrine applies between parties jointly charged with mere negligence, as in the present case, rather than with willful or intentional acts. In this appeal, Royal Indemnity asserts that Nebraska ignores and disregards the historical development of the doctrine, has misinterpreted its scope and applicability, and has

incorrectly applied the doctrine in the recent cases decided by this court.

The law regarding the right to contribution between joint wrongdoers appears to be an offshoot from, and an exception to, the general rule of contribution. The general rule is that one who is compelled to pay or satisfy the whole or bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them the payment of their respective shares. 18 Am. Jur. 2d, Contribution, § 1, p. 6; Exchange Elevator Co. v. Marshall, 147 Neb. 48, 22 N. W. 2d 403 (1946); Restatement, Restitution, § 81, p. 360. The exception to the general rule appears to have originated in England in 1799 in the well-known case of Merryweather v. Nixan, 8 Term. Rep. 186, 101 Eng. Rep. 1337 (1799), where the court denied contribution, apparently because of the fact that the tortfeasors in that case were intentional wrongdoers. See Restatement, Restitution, § 85, p. 387; Reath, Contribution Between Persons Jointly Charged With Negligence—Merryweather v. Nixan, 12 Harv. L. Rev. 176. The rule of Merryweather v. Nixan, *supra,* was subsequently limited in its scope and application by the case of Adamson v. Jarvis, 4 Bing. 66, 130 Eng. Rep. 693 (1827), where the court stated: "* * * the rule that wrong-doers cannot have redress or contribution against each other is confined to cases where the person seeking redress must be *presumed to have known that he was doing an unlawful act.*" (Emphasis supplied.) To the same effect see Betts v. Gibbins, 2 Ad. & E. 58, 111 Eng. Rep. 22 (1834); Pearson v. Skelton, 1 M & W 504, 150 Eng. Rep. 533 (1836). Thereafter, in 1894, the English court, speaking through Lord Herschell, declined to follow the rule of Merryweather v. Nixan, *supra,* where the liability of the tortfeasors was grounded on negligence. Palmer v. Wick & Pulteneytown Steam Shipping Co., 1894 App. Cases 318

(1894). In the United States, however, the distinction between intentional and negligent wrongdoers, which was recognized in the English courts, was not generally accepted, with the result that many jurisdictions in this country have extended the joint tort-feasor exception to deny contribution among joint tort-feasors, regardless of whether their conduct involved willful or intentional misconduct, or mere negligence. See Annotation, 60 A. L. R. 2d 1366, § 3(a) at 1373. On the other hand, many other jurisdictions in this country have permitted contribution among joint tort-feasors, either as a matter of statutory law, or as a matter of common law. See 18 Am. Jur. 2d, Contribution, § 41, p. 60; Annotation, 34 A. L. R. 2d 1107; Annotation 60 A. L. R. 2d 1366, § 4(a), at 1377. It appears that approximately 23 jurisdictions have either adopted the Uniform Contribution Among Tort-feasors Act, approved by the Conference of Commissioners on Uniform State Laws in 1939, or have adopted their own independent acts to accomplish the same or similar purposes. A few states which originally adopted the rule permitting contribution as a result of judicial decision, have subsequently adopted statutes providing for the same or similar rules.

The history of the doctrine in Nebraska has been checkered and unclear. A detailed discussion of the historical development of the doctrine in Nebraska, including an analysis of specific cases, may be found in Busick, Contribution and Indemnity Between Tort-feasors in Nebraska, 7 Creighton L. Rev. 182 (1974), and Comments, The Rule Against Contribution and Its Status in Nebraska, 37 Neb. L. Rev. 820 (1958). Early cases in this jurisdiction strongly indicate that Nebraska followed English Law, and would permit contribution among joint tort-feasors where the party seeking contribution had *not* been guilty of intentional wrongdoing. The earliest case dealing with the problem was Johnson v. Torpy, 35 Neb. 604, 53 N. W. 575 (1892), where the court stated: "In determining whether the right of con-

tribution exists in favor of one wrong-doer against another the test is, must the party demanding contribution be presumed to have known that the act for which he has been compelled to respond was wrongful? If not, he may recover against one equally culpable, but otherwise he is without remedy." In that case the court cited as authority Adamson v. Jarvis, *supra*. See, for example, Torpy v. Johnson, 43 Neb. 882, 62 N. W. 253 (1895); Sharp v. Call, 69 Neb. 72, 95 N. W. 16 (1903). However, it was not until the case of First National Bank v. Avery Planter Co., 69 Neb. 329, 95 N. W. 622 (1903), that this court actually permitted contribution among parties that it regarded as joint tort-feasors. This was done under the theory that the parties had "acted in good faith without any intention of committing a trespass." To the same effect see Schappel v. First National Bank, 80 Neb. 708, 115 N. W. 317 (1908). Some authorities have interpreted these cases as establishing the rule in Nebraska that there may be contribution among joint tort-feasors. See, Comments, The Rule Against Contribution and Its Status in Nebraska, 37 Neb. L. Rev. 820; George's Radio, Inc. v. Capital Transit Co., 75 App. D. C. 187, 126 F. 2d 219 (1942). To the contrary, see language and reasoning of Judge Delehant in Andromidas v. Theisen Bros., 94 F. Supp. 150 (D. Neb., 1950). However, for a critique of that case, see Busick, Contribution and Indemnity Between Tortfeasors in Nebraska, 7 Creighton L. Rev. 182.

Since the decision of this court in Schappel v. First National Bank, *supra*, in 1908, there have been *only* two other cases in which this court has had occasion to consider and discuss the issue of contribution between joint wrongdoers. These were the cases of Tober v. Hampton, 178 Neb. 858, 136 N. W. 2d 194 (1965), and Farmers Elevator Mut. Ins. Co. v. American Mut. Liability Ins. Co., 185 Neb. 4, 173 N. W. 2d 378 (1969). These are the two cases referred to and criticized by Royal Indemnity. In Tober v. Hampton, *supra*, the plaintiffs sought re-

covery for damages to their home resulting from a gas explosion allegedly caused by a leak in the gas main. It was their claim that the leak resulted from the actions of an employee of the defendant while excavating for the construction of a sewer. The District Court dismissed the plaintiffs' cause of action on the ground that they were not the real parties in interest, and the court specifically found that plaintiffs had entered into a "settlement" with the gas company. Upon appeal this court affirmed the dismissal by the District Court. It appears that plaintiffs and the gas company had executed a "loan agreement," under the terms of which the gas company paid $3,500 to the plaintiffs, said "loan" being "repayable only out of any net recovery" obtained by the plaintiffs from the defendant, Hampton. In its opinion, this court recognized that such "loan agreements" are commonplace and valid between insurers and insureds for the purpose of allowing an insurance company to pay the full amount of a claim, while permitting the insured to remain the real party in interest. See, Shiman Bros. & Co. v. Nebraska National Hotel Co., 143 Neb. 404, 9 N. W. 2d 807 (1943); Bozell & Jacobs, Inc. v. Blackstone Terminal Garage, Inc., 162 Neb. 47, 75 N. W. 2d 366 (1956). Since, under the facts of that case, the loan agreement was not between an insurance company and its insured, this court concluded that the plaintiffs were not the real parties in interest in that action; and, accordingly, dismissed their petition. The court specifically found that defendant Hampton and the gas company were joint tort-feasors, and in effect held that a "loan agreement" would not have the same "real party in interest" effect where joint tort-feasors were involved as it has where an individual insurance company has entered into such a "loan agreement" with its own insured. The reasoning behind the distinction was that to allow such a result would be to excuse the joint tort-feasor who was a party to the "loan agreement" from having to pay any amount as compen-

sation for damages to the injured party resulting from the negligence of the joint tort-feasors. In that situation it is clear that one joint tort-feasor would be reimbursed under the loan agreement, while the other joint tort-feasor would end up paying the entire amount of the loss. It would appear, therefore, that in Tober v. Hampton, *supra,* the court declined to hold that the plaintiffs were the real parties in interest under their "loan agreement" with the gas company in order to avoid the result of *indemnification* between the joint tort-feasors, which the court regarded as impermissible. Although the case principally involved the matter of "indemnification" rather than "contribution," the court proceeded further to discuss the issue of "contribution," apparently on the assumption that even if the Tobers were to be regarded as the real parties in interest under the "loan agreement," and if it further developed that the amount of their loan from the gas company under the "loan agreement" exceeded the amount of a judgment recovered by them from Hampton, then Hampton would be entitled to a reduction of, or credit upon, that judgment to the extent of the excess. Upon the basis of that assumption, and after what the court termed a "cursory review" of the prior authorities in Nebraska, the court apparently proceeded to adopt the rule denying contribution among negligent joint tort-feasors. In so doing, the court also expressly overruled First National Bank v. Avery Planter Co., *supra,* and Schappel v. First National Bank, *supra,* to the extent that those cases were in conflict with the rule enunciated in Tober v. Hampton, *supra.* Since, as previously stated, Tober v. Hampton, *supra,* primarily involved the question of indemnity, and only involved the question of contribution tangentially, the necessity of the court's ruling on the issue of contribution is unclear. See dissenting opinion of Smith, J., in Tober v. Hampton, *supra*; and also Busick, Contribution and Indemnity Between Tort-feasors in Nebraska, 7 Creighton L. Rev. 182. It is

also interesting to note that a concurring opinion in that case suggests that the "loan agreement" should have simply been regarded as a settlement. In any event, even if we now hold that contribution between negligent joint tort-feasors is permissible, the result in Tober v. Hampton, *supra*, would remain unchanged.

We now consider the latest and only other opinion decided by this court which in any manner discusses the question of contribution among negligent joint tort-feasors. In the case of Farmers Elevator Mut. Ins. Co. v. American Mut. Liability Ins. Co., *supra*, Farmers Cooperative Association and Wilmac Construction Company entered into a construction contract under which Wilmac was to remodel and renovate the facilities of Farmers Co-op. One Strand, an employee of Wilmac, was injured on the job and brought a negligence action against Farmers Co-op in federal District Court. Farmers Co-Op filed a third party complaint in that action against Wilmac apparently based upon a clause in the construction contract which provided: "Contractor shall further *save and hold harmless* the owner from any claim, liability, action, or cause of action arising out of the performance of this contract based upon the negligence of the contractor, his agent or employees." (Emphasis supplied.) It was obviously the theory of Farmers Co-op that the negligence of the contractor, Wilmac, had caused the injury to Strand. Ultimately, Strand recovered a judgment in the amount of $200,000 against Farmers Co-op. Thereafter, Wilmac consented to entry of judgment against it on the third party claim in the amount of $272,955.74 in the federal court action. Following the judgments rendered in the federal court action, above referred to, Farmers Elevator Mutual Insurance Company and Farmers Cooperative Association brought a declaratory judgment action in the District Court for Douglas County to determine the liability of one of the defendants, Empire Insurance Company, which was the liability insurer of Wilmac, to pay the amount

of the judgment in federal court on the third party claim of Farmers Co-op. Although it is possible that the case might have quite simply been disposed of on the grounds that a clause in the insurance policy of Empire Insurance Company provided that the policy did not apply "to liability assumed by the insured under any contract or agreement," nevertheless, the court proceeded to point out that even if that clause were ignored, the result would still be the same since Farmers Co-op and Wilmac were joint tort-feasors. The court stated: "Both joint tort-feasors being active wrongdoers, contribution or indemnity cannot be maintained by one against the other." Again, however, as with the case of Tober v. Hampton, *supra,* it is not entirely clear to what extent the issue of contribution was decisive of that case. It is equally arguable that the result in the Farmer's Elevator case would remain unchanged even if we adopt the rule that contribution among negligent joint tort-feasors is permissible.

However, even assuming that Tober v. Hampton, *supra,* and Farmers Elevator Mut. Ins. Co. v. American Mut. Liability Ins. Co., *supra,* may be interpreted as authority for the rule in this state that there may be no contribution between negligent joint tort-feasors, we must now consider the question of whether justice and equity require a change in that rule.

The rationale relied upon in denying contribution among intentional wrongdoers, and apparently also the rationale applied to deny contribution in such cases as Andromidas v. Theisen Bros., *supra,* and Tober v. Hampton, *supra,* is that it would be against public policy "to adjust equities between wrongdoers, or to allow a person to found an action on his own wrongdoing." 18 C. J. S., Contribution, § 11, p. 15. However, it has been pointed out that "* * * this reason fails when the tort committed against the third party was due only to *inadvertance,* without any intent on the part of the tortfeasors to injure him." Best v. Yerkes, 247 Iowa 800, 77

N. W. 2d 23 (1956). (Emphasis supplied.) It has been stated: "In most of such cases the reason for the application of the no-contribution rule was said to be based on the principle that the knowledge of a person that he is responsible for all the consequences of a wrong will serve to restrain him, and will thus induce persons to guard themselves a little more warily against participation with others in acts which might produce tort liability. That there may be some basis for this theory in cases in which persons directly contemplate the commission of a wrongful act is obvious, but that it applies equally in cases of unintentional wrong strains one's credulity. To believe that the rule of no contribution will tend to make a careless person careful, or that a motorist who is not deterred from carelessness by fear of personal danger will be affected in his conduct by a legal rule of no contribution between joint wrongdoers, seems to us wholly fanciful." George's Radio, Inc. v. Capital Transit Co., 75 App. D. C. at 188, 126 F. 2d at 220. We are convinced that although it is sound policy to deny contribution among parties who jointly engage in intentional wrongdoing, as was done, for example, in Johnson v. Torpy, *supra,* the rationale for such a denial cannot be extended to apply to cases such as that now before us. Furthermore, we are aware of no other persuasive theory which would operate to justify the extension of the rule denying contribution to cases involving negligent joint tort-feasors. We are thus left only with the consideration that "* * * general principles of justice require that in the case of a common obligation, the discharge of it by one of the obligors without proportionate payment from the other, gives the latter an advantage to which he is not equitably entitled." George's Radio, Inc. v. Capital Transit Co., 75 App. D. C. at 189, 126 F. 2d at 221. Thus, an eminent authority has pointed out the "* * * obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, uninten-

tionally responsible, to be shouldered by one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free." Prosser, Law of Torts (4th Ed.), § 50, p. 307. For further critique of the Nebraska rule, see Busick, Contribution and Indemnity Between Tort-feasors in Nebraska, 7 Creighton L. Rev. 182. It is clear, then, that the arguments in favor of the recognition of a rule permitting at least some form of contribution among negligent joint tort-feasors are very persuasive. In addition, we do not believe that the adoption of such a rule by this court would consist of an invasion by us of the realm of legislative discretion. In this respect, we must agree with the court in Hawkeye-Security Ins. Co., Inc. v. Lowe Construction Co., 251 Iowa 27, 99 N. W. 2d 421 (1959), which pointed out that: "The common-law rule frequently said to deny contribution between joint tort-feasors was evolved by courts. If, as we think, this rule should be limited to cases where there is intentional wrong, moral turpitude or concerted action, it seems to be entirely proper for us to so limit the rule without waiting for the legislature to do so." We, therefore, hold that in this jurisdiction there is no absolute bar to contribution among negligent joint tort-feasors; and also, as in this case, that a right to equitable contribution exists among judgment debtors jointly liable in tort for damages negligently caused, which right becomes enforceable on behalf of any party when he discharges more than his proportionate share of the judgment. To the extent that Tober v. Hampton, *supra,* and Farmer's Elevator Mut. Ins. Co. v. American Mut. Liability Ins. Co., *supra,* contain language inconsistent with the rule announced herein, they are overruled. In all other particulars, those cases are hereby expressly reaffirmed.

There remains only the need to clarify the situation in regard to the parties involved herein. A copy of

plaintiff's insurance policy does not appear in the record of this case and we are therefore unable to determine whether or not there is any contractual provision contained in that policy giving subrogation rights to the plaintiff in the event of payment of an insurance claim. However, even assuming that there is no such specific policy provision, the common law rule is that where an insurer of a joint judgment debtor jointly liable in tort for damage negligently caused discharges more than its insured's proportionate share of the common liability, such insurer is subrograted to the right of its insured to recover contribution from the other judgment debtors. See Annotation, 75 A. L. R. at 1490, and Annotation, 171 A. L. R. at 272. Hence, Royal Indemnity must be regarded as the real party in interest to assert the right of contribution of its insured, Yale and Towne, Inc., against the joint judgment debtors of that insured. Neither Aetna nor Iowa National seriously claim that Royal Indemnity is not subrogated to the rights of its assured, but both companies maintain that by law and the provisions of their respective liability insurance contracts, neither Royal Indemnity, nor its insured Yale and Towne, Inc., can bring a direct action against them. They point out that there is no contractual or statutory provision, or rule of court, authorizing a direct action against a liability insurance carrier, and, in fact, such a direct action violates the provisions of their respective policies, and hence their demurrers against plaintiff's petition were properly sustained. While there are a few jurisdictions that permit direct actions against liability insurance carriers in situations such as this, Nebraska does not have a statute to that effect, or other decision or rule authorizing such direct action. The legal principle governing this situation is set out in 44 Am. Jur. 2d, Insurance, § 1575, p. 460, as follows: "As a general rule, and in the absence of a contractual or statutory provision, or a rule of court, authorizing a direct action against, or the joinder of, a liability insurer, there is no

privity between an injured person and the tort-feasor's liability insurer, and the injured person has no right of action at law against the insurer and therefore cannot join the insured and the liability insurer as parties defendant." Moreover, the respective insuring agreements of the defendants are set out in the record, and both policies provide that the insurance company will pay all sums which the insured shall become legally obligated to pay as damages, and also further require as a condition precedent to an action against the insurance company that "the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial * * *." There is also a provision in the respective policies prohibiting joining the insurance company as a codefendant in any action to determine the insured's liability. Although it is true that the plaintiffs in the Libbey-Owens Ford Glass Company case did obtain judgment against the insureds of the defendant insurance companies, it is likewise true that neither the present plaintiff, Royal Indemnity, nor its insured, Yale and Towne, Inc., have obtained any judgment against Aetna's assured, L & M Paper Company, nor did they obtain judgment against Iowa National's insured, Phil D. Fitzwater, who is also a defendant in this case, and the only insured made a party to this action. Neither Aetna Casualty and Surety Company nor Iowa National Mutual Insurance Company were defendants in the Libbey-Owens Ford Glass Company case, nor was any judgment rendered against either of them in the original action. It is clear, therefore, that they are improper defendants in this action, in spite of the fact that their insureds may ultimately be able to recover against them on their liability policies for the amounts for which they may be held liable. For that reason, the order of the District Court must be regarded as correct to the extent that the court sustained the separate demurrers of Aetna Casualty and Surety Company and Iowa National Mutual Insurance

Company, and dismissed Royal Indemnity's petition against them. However, the remaining defendant in this action, Phil D. Fitzwater, as a partner in All Makes Forklift Service, one of the joint judgment debtors in the prior lawsuits, must be regarded as a proper defendant herein from whom Royal Indemnity may seek contribution of a proportionate share of the judgment paid by it. As such partner he is also individually liable on the judgment, since the petition alleges there are no firm assets from which to collect the judgment. Thus, we believe the District Court erred in dismissing the action as against Phil D. Fitzwater. The order of the District Court must, therefore, be affirmed in sustaining the demurrers of Aetna Casualty and Surety Company and Iowa National Mutual Insurance Company, but must be reversed as to Phil D. Fitzwater, and the cause remanded for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.

SPENCER, J., dissenting.

I respectfully suggest that the majority opinion ignores the rule of stare decisis and invades the legislative arena.

Whatever doubt there may have been as to the scope of the rule in this state regarding the right of contribution among negligent joint tort-feasors, the matter was resolved and laid to rest by this court in the case of Tober v. Hampton (1965), 178 Neb. 858, 136 N. W. 2d 194, and in the subsequent case of Farmers Elevator Mut. Ins. Co. v. American Mut. Liability Ins. Co. (1969), 185 Neb. 4, 173 N. W. 2d 378. Those cases recognized and stated the rule in Nebraska to be that there is no contribution between negligent joint tort-feasors.

Approximately 20 years ago an attempt was made to change this rule legislatively. The effort failed. So far as I have been able to determine, the rule has been changed in 28 jurisdictions. In 23 of them it was done

legislatively, and only in 5 was it done by judicial decision. It occurs to me that those of us who denounce the attempts by the legislative branch of government to encroach into the executive and the judicial areas should exercise restraint by practicing what we preach. This was a proper area for legislative consideration. I refuse to join my colleagues in encroaching into the legislative arena.