JOHN E. ENGLISH, APPELLEE, v. BRUIN ENGINEERING, INC., ET AL., APPELLEES, IMPLEADED WITH ARNE M. MATTSON, APPELLANT.

272 N. W. 2d 753

Filed December 13, 1978. No. 41709.

Daniel W. Ryberg, for appellant.

Rollin R. Bailey of Bailey, Polsky, Huff, Denney & Cada, for appellee English.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and RIST, District Judge.

CLINTON, J.

This is an action by the plaintiff John E. English to recover damages allegedly caused by false representations made by the defendants for the purpose of inducing the plaintiff to loan $10,000 to the defendant Bruin Engineering, Inc. The jury rendered a verdict for the plaintiff against all defendants, namely Bruin Engineering, Inc.; L. W. Mattson, its president; and Arne M. Mattson, an investor in Bruin Engineering, Inc., and brother of L. W. Mattson. Only Arne M. Mattson has appealed from the judgment, and we will hereafter usually refer to him as the defendant and the other defendants by their names. The principal question on appeal is the sufficiency of the defendant's participation in the claimed fraudulent representations.

Three assignments of error are made and argued: (1) The court erred in denying a continuance to the

defendant at the beginning of trial for the purpose of taking the deposition of the plaintiff English. (2) The court erred in permitting the testimony of the plaintiff English to come in by a previously taken deposition. (3) The court erred in refusing the motion of the defendant for a directed verdict for him on the ground that the evidence was insufficient to permit a finding of actionable fraud by the defendant. We affirm.

The evidence shows that, on September 4, 1974, the plaintiff loaned $10,000 to Bruin Engineering, Inc., and received from Bruin a promissory note for that amount plus interest. L. W. Mattson also executed the note personally as principal. The defendant guaranteed the note to the extent of $3,300.

The allegations of fraud by Bruin and L. W. Mattson are several but, for purposes of this opinion, we need mention only that the financial statements of Bruin and L. W. Mattson, which were presented to plaintiff in order to induce him to make the loan, were alleged to be false and fraudulent in that they substantially misrepresented the net worth of said defendants. As to the defendant Arne M. Mattson, it is alleged he knowingly and willfully aided Bruin and L. W. Mattson by representing that he owned an interest in Bruin of the value of $11,000 and by authorizing his own net worth statement which contained that item to be presented to plaintiff by L. W. Mattson. It is also alleged the defendant knew or should have known the representations made by the other defendants were false and were made for the purpose of inducing the loan.

The evidence shows without contradiction that L. W. Mattson, in order to induce the loan by plaintiff, presented to him the following: (1) The financial statement of L. W. Mattson which showed a net worth of $386,132.50. The principal assets of this statement were L. W. Mattson's interest in Bruin which was shown as being worth $250,000 and an in-

terest in Mattson Enterprises which was shown as being worth $129,600. (2) A balance sheet of Bruin which showed a stockholders' equity of $790,933.51. (3) The balance sheet of the defendant which showed net assets of $138,316.80, including the interest in Bruin of $11,000 which we have previously mentioned. The evidence shows that, as of the date shown on the various financial statements and on the date they were presented to plaintiff, Bruin had no assets and no income, was not an operating corporation, and had been evicted from its leased premises on the Lincoln Airport Authority property because of nonpayment of rent in the amount of about $23,000. It also showed Bruin had turned over to the Airport Authority what property it had in order to secure the back due rent, and that property was worth far less than the rental owed. The evidence further showed Mattson Enterprises was defunct or in grave financial trouble.

The evidence is clearly sufficient to show the defendant knew L. W. Mattson intended to present the financial statements, including the defendant's own, to plaintiff for the purpose of inducing the loan; and defendant knew Bruin and Mattson Enterprises were defunct businesses without assets. The evidence does not show the financial statement of the defendant was false except insofar as it indicated a value of $11,000 for his interest in Bruin. There was no personal communication between the defendant and the plaintiff. The evidence shows, however, that the defendant furnished his own financial statement to L. W. Mattson for the purposes above mentioned.

The assignments of error relating to the denial of a continuance and the use of the deposition of the plaintiff are related and we will discuss them together. The plaintiff was 79 years old at the time of trial, and at all relevant times he was a resident of Lancaster County, Nebraska. The defendant was a

resident of Douglas County, Nebraska. L. W. Mattson, at the time of bringing of suit and thereafter, appears to have been a resident of California; but, during the period when negotiations for and consummation of the loan were taking place, he was in the State of Nebraska and living, at least a part of the time, with his brother, the defendant. The action was filed in Douglas County as was proper under section 25-409, R. R. S. 1943.

Prior to trial and pursuant to proper notice, the deposition of plaintiff was taken. Counsel for defendants did not cross-examine the plaintiff during the taking of that deposition. At the beginning of trial, counsel for the defendant became aware that the plaintiff would not testify in person but his deposition would be used instead, and moved for a continuance in order that he might take the plaintiff's deposition for purposes of cross-examination. The court at that time overruled the motion, because the case had been set for trial for a considerable length of time and the court did not consider a postponement justified. When the deposition was actually offered, the court sustained a renewed objection to the deposition since the conditions prescribed by section 25-1267.04, R. R. S. 1943, permitting the use of depositions had not yet been met. A showing was then made that the plaintiff was not in Douglas County and that he was in a state of health which made his appearance at trial inadvisable. At that time the court indicated it would adjourn the trial in order to permit the defendant to take the plaintiff's deposition. Defendant's counsel declined the opportunity because of "expense" and delay. The court then overruled the objection to the deposition.

The court clearly did not err in overruling the objection. Section 25-1267.04, R. R. S. 1943, provides in part: "At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was pres-

ent or represented at the taking of the deposition or who had due notice thereof, in accordance with any of the following provisions: . . . (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (b) that the witness is out of the county of the place of trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition; (c) that the witness is unable to attend or testify because of age, sickness, infirmity, . . . ." The evidence clearly supports the court's findings that plaintiff was out of the county, that his absence was not "procured" by the party offering the deposition, and that the witness was unable to attend because of sickness or infirmity.

The defendant argues that a party's deposition may not be used by the party except upon compliance with subsection (3) (e) of section 25-1267.04, R. R. S. 1943, which provides that a deposition may be used at trial: "upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used;" and that the defendant had no notice the plaintiff would not be present in person to testify until the beginning of trial. The defendant misreads the statute. Subsections (a) through (f) of that statute describe alternative conditions under which the deposition may be used whether or not the witness is a party.

The defendant's contention that the evidence does not sustain the verdict revolves mostly around the following propositions: (1) Defendant made no false representations. (2) If he did, plaintiff had no right to rely on them. (3) The misrepresentations in any event were immaterial. (4) Any representations made by the defendant were not the cause of the plaintiff's loss. (5) The defendant did not in any

way profit from the fraud of Bruin and L. W. Mattson. (6) In any event, the plaintiff's loss should be apportioned among the three joint tort-feasors, and the defendant should be responsible for only one-third of the total loss.

The first four aspects of the plaintiff's contentions will be discussed together. The evidence would support the following conclusions by the finder of fact: The defendant furnished his own property statement to L. W. Mattson, knowing it would be submitted to the plaintiff together with the statements of Bruin and L. W. Mattson for the purpose of inducing the plaintiff to make a loan of $10,000 to Bruin. The defendant was familiar with those financial statements as they had been shown to him by L. W. Mattson prior to presentation to the plaintiff and the defendant knew the contents of the statements of Bruin and L. W. Mattson were false in the respects already mentioned. He also knew his own interest in Bruin was worthless and his brother was insolvent, because he was contributing to his brother's support and lending him money on which to live and to promote the proposed manufacturing enterprise of Bruin. The evidence shows that plaintiff relied upon these various financial statements in making the loan.

Is the evidence sufficient to impose liability on the defendant? We hold that it is. The essential elements of a cause of action founded upon fraud or deceit are: That a representation be made as a statement of fact, which was untrue and known to be untrue by the party making it or was recklessly made; that it be made with intent to deceive and for the purpose of inducing the other party to act upon it; and that the other party be induced by reliance on it to act to his injury or damage. Bellairs v. Dudden, 194 Neb. 5, 230 N. W. 2d 92.

The defendant argues that since, on his own financial statement his interest in Bruin is valued at cost,

the plaintiff had no right to rely thereon. He further contends that investigation by plaintiff would have shown him the financial statements of Bruin and L. W. Mattson were false. It is clear the defendant knew that the purpose of a financial statement is to show value and that worthless or nonexistent items should not be included on such statements. The inclusion of the Bruin item in his own statement, even showing it to be valued at cost, tended to support and give added credibility to the statement of worth of the other two joint tort-feasors. Those statements did not indicate the assets were valued at cost but could properly be read as showing real value. Since the defendant's guarantee was limited to $3,300, it seems obvious plaintiff was thus relying on Bruin and L. W. Mattson's worth as to the balance. The defendant's implicit representation that his own interest in Bruin was worth $11,000 at least impliedly supported the inference that Bruin's statement of worth was true and that the statement of L. W. Mattson was also true to the extent it consisted of an interest in Bruin. It seems clear enough the fact finder was entitled to conclude that the representation by the defendant was material and the plaintiff was entitled to rely thereon.

"A person is justified in relying upon a representation made to him in all cases where the representation is a positive statement of material fact, and where an investigation would be required to discover the truth." Mid-States Equipment Co. v. Evans, 191 Neb. 230, 214 N. W. 2d 496. The facts in this case are similar to those in Hall-Doyle Equity Co. v. Crook, 245 Mich. 24, 222 N. W. 215, where it is said: " 'Where one deliberately gives another a false statement in writing, knowing the purpose for which it is to be used, which that other uses to deceive a third party, he is a joint wrong-doer, and must be held responsible for the consequences which follow.' "

It must be conceded on the basis of the evidence in this case that the defendant did not profit from the fraud, nor does it appear he intended to profit. However, it is not essential to actionable fraud that the guilty party receive any benefit. The gravamen of the action is injury to the plaintiff, not benefit to the defendant. Hall-Doyle Equity Co. v. Crook, *supra*; 37 C. J. S., Fraud, § 44, p. 297.

The opinions which the defendant cites in support of the proposition that liability for damages caused by the fraud must be apportioned among joint tort-feasors do not support that proposition and, with one exception, we will not waste space in discussing them. Defendant cites Royal Ind. Co. v. Aetna Cas. & Sur. Co., 193 Neb. 752, 229 N. W. 2d 183. That case involved the right of contribution of joint tort-feasors as among themselves. It had nothing at all to do with the nature of their liability to the person injured. The rule in this state is: " 'An act wrongfully done by the joint agency or co-operation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally.' " Gergen v. The Western Union Life Ins. Co., 149 Neb. 203, 30 N. W. 2d 558.

AFFIRMED.